THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
WARREN FOSTER, Defendant-Appellant.

Fifth District   No. 75-359

Opinion filed November 3, 1976.

Stephen P. Hurley and A. Michael Kopec, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Nicholas G. Byron, State's Attorney, of Edwardsville (Bruce D. Irish and Raymond F. Buckley, Jr., both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

Defendant, Warren Foster, was charged by indictment filed in the circuit court of Madison County with the offense of murder. Following a jury trial defendant was found guilty as charged and was sentenced to a term of 14 to 18 years' imprisonment. From the judgment entered by the trial court, defendant appeals.

On appeal, defendant contends that his conviction should be reduced to voluntary manslaughter, that certain evidence was erroneously excluded, and that certain jury instructions were improperly given.

On the morning of September 21, 1974, defendant shot and killed Solomon Rogers. He then surrendered himself to the police. Soon after surrendering himself at about 11:30 a.m. of that same day the police interrogated defendant. The interrogation was recorded on a tape recorder. Later that same day at 3:15 p.m., defendant made a confession which was recorded on videotape. A motion to suppress the videotaped confession was denied and during the trial, the jury saw and heard the videotape. The videotape was the State's primary source of evidence at trial.

According to the defendant's videotaped confession, on the day of the occurrence, defendant was at the house of Bud Naylor, a private residence which was also a tavern and gambling casino. When Rogers arrived, he approached defendant and stated that he would not pay a $35 debt owed to defendant. Defendant and Rogers had been friends since their boyhood but the friendly relationship was severed in 1964 when defendant had refused to submit a false statement in connection with a law suit by Rogers against a railroad. Since that time Rogers had insulted, threatened and, at times, had struck defendant. In addition to refusing to pay the debt, Rogers ridiculed and criticized defendant. Defendant responded in kind by ridiculing Rogers. During the argument, Rogers slapped defendant's face. Defendant then walked over to Houston Terrell and he handed his gun to Terrell to hold for him in order to avoid trouble. Rogers, however, continued by calling defendant a "white folks snitcher," and by displaying a knife. Defendant stated, "Sol, if I were you, I wouldn't use it, if you do I'm going to kill you." Thereafter defendant stated, "If you hit me again, I'm going to kill you." Rogers, after hearing this, slapped defendant again. Defendant took a step toward Rogers but Rogers was then either pushed out of the door by other customers or he backed out of the door. As he was leaving Rogers stated, "I'll be back."

Defendant went to Terrell and demanded to have his gun. Terrell resisted but defendant grabbed the gun and he stated, "I'm tired of him beating me up and I'm sick of him." He then followed Rogers while shouting, " * * * you called me a white folk snitcher and I told you, God damn it, if you hit me again, I was going to kill you." Rogers walked quickly down a driveway; defendant, around 40 feet behind him, shouted, "Turn around so I won't have to shoot you in the back." Rogers replied, "If you are going to shoot me, you are going to have to shoot me the way I'm going." To this defendant stated, "You're damn sure shot." Defendant fired the weapon and Rogers fell and died of a gunshot wound to the back of the head. Defendant went back into the house and announced that he had killed Rogers. Before surrendering himself to the police, defendant went to his home and informed his wife that he had killed Rogers because " * * * he slapped me and he treated me like a

damn dog and I got sick of it and I begged him to leave me alone and he didn't do it and I did it intentionally and it wasn't no accident."

Other evidence produced by the State showed that when defendant surrendered at the Alton Police Station, he appeared to be calm, rational and not intoxicated.

At trial, defendant asserted the defenses of insanity, intoxication and self-defense. Instructions and verdict forms were also given, on defendant's request, on voluntary manslaughter. Extensive uncontroverted evidence was presented concerning Rogers' reputation in the community for being a violent and dangerous person. The defendant testified that many times in the ten years since the railroad incident, he had been subjected to abuse and threats by Rogers. On three occasions Rogers showed defendant a shotgun which Rogers kept in his car and he threatened to use it against defendant. The last such threat occurred only a week prior to the shooting. Defendant testified that he had grabbed his gun from Terrell because he had thought that Rogers was going to get the shotgun that was in Rogers' car. He denied that he had himself threatened to kill Rogers and he denied having any conversation with Rogers once outside the house. Furthermore, he testified that he was intoxicated during the time that he had made the videotaped confession and that he had been instructed by the police on what to say. He also said that he only intended to wound Rogers in the shoulder to force him to drop the knife and to prevent Rogers from reaching the shotgun.

In support of his defense of insanity, defendant testified that he was an alcoholic and that while intoxicated in March, 1974, he had attempted to put his wife's head into hot water and in June, 1974, he had attempted to jump out of a moving automobile. Nathan Blackman, a psychiatrist who examined defendant on three occasions prior to trial, testified that defendant suffered from a degree of pathological intoxication which deprived him of the capacity to conform his behavior to the requirements of the law. Blackman stated, however, that a psychological report indicated that defendant had only very minimal brain damage.

On rebuttal, the State presented the tape recording of the first interrogation of defendant. A transcript of this recording was not made part of the record on appeal. Deputy Robert Hertz testified that the videotape was made after it was determined that portions of the first tape recording were inaudible. Hertz denied that defendant was intoxicated at the time or had been instructed on what to say.

Defendant first contends that the evidence shows that he had believed that circumstances existed at the time of the killing which justified his use of deadly force in "self-defense" against Rogers although his belief was, in fact, unreasonable. Thus, he argues that his murder conviction was not supported by sufficient evidence and he should have only been found

guilty of voluntary manslaughter. The State responds by contending that this issue was waived by defendant.

The record shows that defendant tendered voluntary manslaughter instructions and verdict forms and that these were given by the trial court. In closing argument, defendant argued that he should only be found guilty of voluntary manslaughter. In his written post-trial motion, defendant alleged that the jury's verdict of murder was not supported by "evidence sufficient to justify such a finding." It appears from the record that the trial court, in fact, had focused upon the issue now raised on appeal and that the language used in the post-trial motion had been sufficient to inform the court of this point. We therefore will consider the merits of defendant's contention.

Defendant argues that the evidence shows that he had believed that Rogers had left the Naylor house and was walking to his automobile in order to get the shotgun that was in the trunk of the auto. Thus in the heated atmosphere, defendant argues, he believed that deadly force was justified in order to prevent his own imminent death or great bodily harm.

Section 9—2(b) of the Criminal Code (Ill. Rev. Stat. 1973, ch. 38, par. 91—2(b)), under which defendant bases his contention, provides that:

"A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify or exonerate the killing under the principles stated in Article 7 of this Code, but his belief is unreasonable."

As we stated in *People v. Vaughn*, 26 Ill. App. 3d 247, 255, 324 N.E.2d 697, 702:

"In effect, section 9—2(b) takes into account that human beings, in a heated atmosphere, might reach conclusions which seem to them under the circumstances reasonable, but which in the cold light of rational analysis are obviously unreasonable."

Defendant argues that Rogers had a reputation for violence. That just prior to the occurrence, Rogers had slapped defendant twice, had threatened defendant's life and had pulled out a knife. Defendant testified that he had thought that Rogers was going to get the shotgun, "Because he had told me he had it and I saw it in his car and the tone of voice he was usin' would make anyone feel that the man was goin' to do somethin' to you."

While it is undisputed that Rogers was violent and had often threatened and abused defendant, defendant had stated in the videotaped statements that he himself had responded in kind with abuse and threats directed at Rogers. Moreover, on videotape, defendant had stated that he had told Rogers that if Rogers would hit him again he would kill Rogers. After Rogers struck him again, defendant grabbed his gun because he was

"tired of him beating me up * * *." Before shooting Rogers in the back of the head, defendant told him, "You called me a white folk snitcher and I told you, God damn it, if you hit me again, I was going to kill you." After the killing defendant had stated, "[H]e treated me like a damn dog and I got sick of it * * *."

■■ The evidence was thus conflicting whether defendant thought Rogers was going to get the shotgun or whether defendant simply meant to violently end a long-standing hostility. It was for the jury to resolve the conflicting evidence. (*People v. Hurst*, 42 Ill. 2d 217, 247 N.E.2d 614, *vacated in part on other grounds*, 408 U.S. 935.) They saw and heard the testimony of the witnesses and, particularly, they were able to see and hear the defendant's videotaped confession as well as the earlier tape recorded interrogation. They were thus able to compare defendant's credibility when he confessed and when he testified. Since we find ample evidence supporting the jury's verdict, we find defendant's contention to be without merit.

We will consider defendant's next two contentions together. First, he contends that the trial court erred in sustaining the State's objections to testimony that one month before the shooting, Rogers had threatened to burn defendant. Second, he contends that the court erred in sustaining the State's objection to the confusing form of two questions asked of the defense psychiatrist. Neither of these contentions were specifically included in defendant's written post-trial motion. Generally where the grounds for a new trial are stated in writing, only those errors alleged therein may be raised on appeal and all other errors are deemed to have been waived. (*People v. Hairston*, 46 Ill. 2d 348, 263 N.E.2d 840; *People v. Irwin*, 32 Ill. 2d 441, 207 N.E.2d 76; *People v. Price*, 32 Ill. App. 3d 610, 336 N.E.2d 56.) Citing *People v. Whitehead*, 35 Ill. 2d 501, 221 N.E.2d 256, and *People v. Flynn*, 8 Ill. 2d 116, 133 N.E.2d 257, defendant argues that since the State had not objected to the lack of specificity of the motion for a new trial, these alleged errors should not be deemed to have been waived. However, *Whitehead* and *Flynn* are distinguishable since those cases involved nonspecific oral motions rather than a written post-trial motion as in the case at bar. Consequently we consider defendant's motion for a new trial a waiver of the alleged errors he now seeks to raise.

Defendant further contends that the trial court erred in giving the jury two instructions which had been tendered by defendant. The first of these involves an "issues in murder" instruction which defendant argues was defective since it did not contain the additional proposition that the State must prove that defendant did not believe that circumstances existed which justified the use of force which he used. The second instruction complained of is an "issues in voluntary manslaughter" instruction which defendant argues was defective because it states the proposition that "the

State" must prove that defendant believed that circumstances existed justifying the killing, but the only evidence of his belief was presented by the defense. In addition, defendant argues that his contentions are not "waived" citing as authority Supreme Court Rule 451(c) (Ill. Rev. Stat. 1975, ch. 110A, par. 451(c)) and *People v. Wright*, 24 Ill. App. 3d 536, 321 N.E.2d 52. Supreme Court Rule 451(c) provides that in criminal cases substantial defects in instructions are not waived by failure to make timely objections thereof if the interests of justice so require. Thus in *Wright* the court stated:

> "One who seeks to avoid waiver of defects in instructions for failure to make specific objection has burden of establishing (a) that the defects in the instruction are substantial, and (b) that the giving of the instruction resulted in denying to the defendant a fair trial and justice." 24 Ill. App. 3d 536, 540, 321 N.E.2d 52, 56.

■■ In the case at bar, we do not deal with instructions to which defendant merely failed to make a specific objection but rather with instructions given at defendant's request. The case at bar therefor does not fall within the ambit of Supreme Court Rule 451(c). In *People v. Riley*, 31 Ill. 2d 490, 496, 202 N.E.2d 531, 534, the court stated:

> "It is axiomatic that an accused cannot complain of error acquiesced in or invited by him, and to this end we have held that a defendant may not complain of defects in instructions which were given at his request. (*People v. Beil*, 322 Ill. 434, 442, 153 N.E. 639; *People v. Fox*, 319 Ill. 606, 619, 150 N.E. 347) * * *."

To hold otherwise would permit a defendant to benefit from errors attributable to him. Exceptions to this general rule, however, have been made in connection with the consideration of claims of incompetency of counsel (*People v. McCoy*, 80 Ill. App. 2d 257, 225 N.E.2d 123) or where the instructions are so misleading or amount to such a misstatement of law as to support a claim of violation of due process (*People v. Bender*, 20 Ill. 2d 45, 169 N.E.2d 328; *People v. Hazen*, 104 Ill. App. 2d 398, 244 N.E.2d 424). Neither of these exceptions are found in the case at bar. Therefore defendant may not challenge the propriety of these instructions.

■■ Lastly defendant contends that the court erred in giving the State's instruction defining the defense of insanity (IPI—Criminal No. 24.01) referring particularly to the second paragraph which states:

> "Abnormality manifested only by repeated criminal, or otherwise antisocial conduct, is not mental disease or mental defect."

The defendant argues that this paragraph may only be given when the evidence *only* shows an abormality manifested by repeated criminal or otherwise anti-social conduct. Defendant's argument, unsupported by authority, does not follow logic. In such a situation the evidence would not be sufficient to raise the affirmative defense of insanity. (*People v.*

*Mask,* 34 Ill. App. 3d 688, 339 N.E.2d 417.) The Committee Note following IPI—Criminal No. 24.01 states that the second paragraph should be given only when the evidence shows repeated criminal or other antisocial conduct. The record in the instant case shows evidence to support the giving of the second paragraph. The defendant testified that he had been arrested about 35 or 40 times for intoxication since moving into the Alton area and he described some incidents in which he had tried to put his wife's head into hot water and, on another occasion, he attempted to jump out of a moving automobile.

For the foregoing reasons, we affirm the judgment of the circuit court of Madison County.

Affirmed.

KARNS, P. J., and JONES, J., concur.