**STATE of Missouri, Respondent,**

v.

**Jon L. STENNER, Appellant.**

**No. KCD 30597.**

Missouri Court of Appeals,
Western District.

Oct. 29, 1979.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 3, 1979.

Application to Transfer Denied
Jan. 15, 1980.

Gerald Kiser, Public Defender, Seventh Judicial Circuit, Liberty, for appellant.

John Ashcroft, Atty. Gen., Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before SHANGLER, P. J., and SWOFFORD, and CLARK, JJ.

SWOFFORD, Judge.

Defendant was convicted on October 12, 1978, after jury trial, of the offense of felonious assault without malice aforethought, § 559.190 RSMo 1969 [1] and was sentenced to six months in the county jail and a $1000.00 fine. The sufficiency of the evidence is not challenged, hence the facts may be briefly summarized.

The evidence as to the circumstances surrounding the assault is in conflict, but viewed in the light most favorable to the State the jury could reasonably find that:

On August 14, 1977, the defendant was operating his automobile in the right-hand lane of the one-way roadway eastbound on Highway No. 69 in Clay County, Missouri. Ray Stull was operating a motorcycle in the same direction and behind the defendant and attempted to pass the defendant on the left lane of pavement. Just as Stull pulled out to pass, the defendant switched to the left lane, blocking Stull's path. Stull managed to avoid a collision and gave the defendant "the finger". As the vehicles proceeded down the highway, the defendant began deliberately slowing down and changing lanes to prevent Stull's passing. When both vehicles stopped in obedience to a traffic signal at Randolph Road and 69 Highway, the defendant got out of his car, approached Stull and inquired if he "had a problem with" his "finger", and Stull responded by asking defendant what he would do if someone "just about run him over" or almost "ran him off the road". Thereupon, the defendant struck Stull in the left eye shattering his sunglasses and driving pieces of broken glass into Stull's eye, resulting in injuries which required hospitalization and surgery and resulted in permanent eye damage. After striking the blow, the defendant returned to his car and left the scene of the altercation. Stull wrote the defendant's license number down at the scene. The defendant was later arrested, charged, tried and convicted.

---

1. The crimes of the various degrees of assault are now §§ 565.050, 565.060, and 565.070 in the new Criminal Code, effective January 1, 1979, Laws 1977.

The defendant in his motion for a new trial raised only one allegation of error, namely, that the trial court erred in failing to declare a mistrial, admonish the jury, and strike from the record certain testimony of Police Officer Billy M. Harris, and a statement of the Prosecutor with reference to the defendant's refusal to make a statement to the police subsequent to his arrest and receipt of the *Miranda* warning, alleged to be in derogation of his constitutional rights against self-incrimination and due process.

This position comes to this Court embodied in two points relied on in appellant's brief and asserted with more specificity. The *first* of these charges the trial court with error in overruling defendant's motion for a mistrial after having previously overruled defense counsel's objection to strike during cross-examination of Officer Harris' testimony that "I read him his rights and he didn't want to make any statements", and on redirect by the prosecutor of Officer Harris when the witness was asked if he had advised defendant of his rights and if he understood them, and then asked, "And he made no statements to you—". The defendant's position is that both of these instances infringed upon defendant's constitutional right to remain silent. The *second* point on this appeal is that the failure of defense counsel to object, request that the jury be instructed to disregard, and to strike the statement of the prosecutor on redirect examination of Officer Harris was not waived. Both of these points require a somewhat detailed scrutiny of the record of Officer Harris' testimony.

On August 14, 1977, Billy Harris was a member of the police staff of Claycomo, and in the late afternoon of that day he was dispatched to investigate the occurrence which gave rise to this proceeding, at Highway 69 and Randolph in Clay County, Missouri. When he arrived at the scene, the defendant was not there, but he obtained his license number from Stull, victim of the assault, and shortly thereafter arrested the defendant and took him to the Clay County Jail at Liberty, Missouri for booking. He was called as the first witness for the State.

He was not asked any questions by the prosecutor relating to his conversations with or statements of the defendant following the arrest. However, the following appears as part of the cross-examination of Officer Harris by counsel for defense:

"Q. (By Mr. Fox) Well, back up. My question is, did you take a statement of Jon Stenner?

A. No, I didn't.

Q. *Did you ask him for a statement?*

A. *I read him his rights and he didn't want to make any statements.*

MR. FOX: Well, now, Your Honor, I object to that *and move that be stricken.*

MR. DAVIDSON (Prosecutor): Your Honor, he's answered the question.

THE COURT: The objection is overruled.

Q. (By Mr. Fox) You read him his rights?

A. Uh-huh.

Q. What are his rights?

A. The *Miranda Warning.*

\* \* \* \* \* \*

Q. Just tell us exactly what you said to him, Officer.

A. I don't have the card present, the *Miranda Warning* card that I had.

\* \* \* \* \* \*

Q. Did you tell him he had the right to talk to an attorney?

A. Yes, I did.

Q. *Did you tell him that anytime he didn't want to talk any further he didn't have to?*

A. *Yes, I did.*

Q. You told him all this?

A. Uh-huh.

\* \* \*." (Emphasis supplied)

On redirect examination by the prosecutor, the following appears:

"Q. (By Mr. Davidson) Now, when you advised Mr. Stenner of his rights, you say you used a card?

A. Yes, I did.

Q. All right. And, subsequent to that, do you think he understood those rights?

A. I believe he did.

Q. And he made no statements to you —" (Emphasis added)

Thereupon, before the question was completed, at the request of defense counsel, a colloquy between Court and counsel, out of the hearing of the jury, appears wherein defense counsel, for the first time, asked that the Court declare a mistrial. The prosecutor objected to granting a mistrial upon the ground that the defense had opened up the subject in cross-examination of the officer and that he, the prosecutor, was just "following up" on that questioning. The trial court overruled the motion for a mistrial.

It is the law of ancient vintage, frequently restated, that the silence of a person and his failure thereby to offer an exculpatory statement, while under arrest for a crime, is not admissible as proof of guilt or as an admission against interest because he is under no duty to speak. *State v. Stuart*, 456 S.W.2d 19, 22[3] (Mo. banc 1970), and authorities cited therein. To permit such evidence as part of the State's case in a criminal proceeding would violate such person's constitutional right against self-incrimination and deny him the protection of the Fifth and Fourteenth Amendments to the Constitution of the United States, and of Article 1, § 19, of the Missouri Constitution. *State v. Starks*, 459 S.W.2d 249, 251[6] (Mo. 1970); *State v. Roth*, 549 S.W.2d 652, 654–655[2–4] (Mo.App.1977). This principle has been engrained in the law of Missouri since *State v. Glahn*, 97 Mo. 679, 11 S.W. 260 (1889), and *State v. Young*, 99 Mo. 666, 12 S.W. 879 (1890).

This constitutional safeguard (and others involving the admissibility of evidence as firmly fixed in legal principles) is subject to the exception that the constitutional burden of inadmissibility is waived where no objection is made to the evidence or such evidence is introduced or injected into the trial by the defense. The factual background of each case as to the trial circumstances and evidence complained of is necessarily varied and only rarely similar, and each case must be separately evaluated against the foregoing principle and the recognized exceptions where waiver of the constitutional fault appears.

A case factually very similar to the instant case is *State v. Mayo*, 559 S.W.2d 264 (Mo.App.1977) wherein in an appeal from a conviction of manslaughter the defendant raised as one of his points on appeal that the trial court erred in not declaring a mistrial because the arresting officer, France, testified that at one point during defendant's interrogation at the police station Mayo, the defendant, refused to talk any further and refused to make a written statement, and in support of such point urged the defendant's constitutional right to remain silent.

The State's attorney elicited from Officer France the fact of defendant's arrest, admissions at the scene from defendant that he shot the victim, the giving of the *Miranda* warning, including the right to remain silent, Mayo's oral statements at the police station, and all of the details surrounding the arrest and early investigation of the case. All of this came in without objection. The prosecutor did not bring out from Officer France on direct examination anything about Mayo's refusal to talk or desire to remain silent.

On *cross-examination* of Officer France *by the defense counsel*, he was asked (l.c. 267), "whether he took a written statement from Mayo, to which the officer answered 'No'. The question 'Why not?' was answered, 'He didn't want to talk anymore' * * *" In ruling the point against Mayo, the court said, l.c. 267[3]:

"* * * Appellant may not be heard to charge prejudice on account of testimony produced by appellant's own counsel. Any objection to the testimony of the police officer with respect to appellant's unwillingness to talk was waived. *State v. Cooksey*, 499 S.W.2d 485, 488[1, 2] (Mo. 1973); *State v. Barron*, 465 S.W.2d 523, 526[1] (Mo.1971)."

[See and compare *State v. Paige*, 446 S.W.2d 798, 806[14] (Mo.1969) and cases collected at Missouri Digest, Criminal Law, ☞1137(2) and 1137(5)].

In the instant case, the first mention that was made of the defendant remaining silent or of his refusal to give a statement was elicited by counsel for defendant Stenner on cross-examination of Officer Harris, which calls into application the rule of waiver expressed in *Mayo*, and the cases cited therein supra and *State v. Paige*, supra.

While it is true, as pointed out in appellant's brief, that the answer "I read him his rights and he didn't want to make any statements" in response to the *defense* counsel's question, "Did you ask him for a statement?", as set forth herein, was "more or less a voluntary statement" (as characterized in defendant's brief) and was not directly responsive to the question, no objection was made on that ground. It is obvious that the question was susceptible to a "Yes" or "No" answer, and the direct answer could only be "Yes" under the circumstances shown in this record. Had such a direct answer been given, it would have been entirely proper to permit the witness to explain, or the State to ask for clarification or explanation of the affirmative answer. *State v. Matha*, 446 S.W.2d 829, 832[3] (Mo.1969). This would have brought forth the same response that the defendant did not want to make a statement. The net result would have been the same.

Under this record, the constitutional rights of defendant to remain silent and his constitutional right against self-incrimination were relinquished or waived under the rule in *Mayo* and similar cases, by the defense counsel introducing the subject and the incidents bearing thereon in the cross-examination of Officer Harris, and the court did not err in permitting the State to pursue the subject in further examination of the witness.

As previously mentioned, the defendant's Points 1 and 2 both deal with the same subject, are properly considered together as basically the same point, and can be and are here ruled by the above principles. Both points are ruled against defendant.

The judgment is affirmed.

All concur.