**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Leo George EDWARDS,
Defendant-Appellant.**

**No. 11111.**

Missouri Court of Appeals,
Southern District.

Dec. 19, 1979.

Motion for Rehearing or to Transfer
Denied Jan. 10, 1980.

Application to Transfer Denied Feb.
11, 1980.

---

1. Under the forty days permitted by the rule, November 22, 1978 was the last day for defendant to file his motion.

Loren R. Honecker, Springfield, for defendant-appellant.

John Ashcroft, Atty. Gen., Kathryn Marie Krause, Steven Scott Clark, Asst. Attys. Gen., Jefferson City, for plaintiff-respondent.

FLANIGAN, Chief Judge.

A jury found defendant Leo George Edwards guilty of robbery in the first degree (§ 560.120 RSMo 1969) and fixed the punishment at 12 years' imprisonment. Judgment and sentence were entered on the verdict. Defendant appeals.

Defendant's first contention is that the trial court erred "in allowing defendant to represent himself at the trial because such act deprived defendant of his right to counsel in that defendant, not having been properly apprised of the pitfalls of self-representation, did not knowingly and intelligently waive his right to counsel."

The instant trial was the second trial for this offense. The first trial, at which defendant was represented by counsel, resulted in a guilty verdict but the trial court granted a new trial because of an error in an instruction.

Immediately prior to the commencement of the second trial the court inquired whether the parties were ready for trial. The prosecutor replied that the state was ready and attorney John Newberry announced that the defendant was ready. The following ensued:

"THE COURT: Now, the defendant announced last week that he is going to try his own case, but has asked the court to have Mr. Newberry at the counsel table and available for advice. I think it was announced last week that Mr. Newberry would be the one who would conduct the voir dire examination of the jurors. Mr. Newberry, is that still the situation?

"MR. NEWBERRY: That's my understanding, yes."

During the trial defendant and attorney Newberry combined their efforts in presenting the defense. The state presented the testimony of four witnesses and defendant cross-examined each of them. Defendant conducted the direct and redirect examination of ten defense witnesses. Attorney Newberry, who was present throughout the trial, performed various functions[1] in acting as co-counsel for defendant.

1. Attorney Newberry conducted the voir dire examination of the jury panel, challenged a venireman for cause, participated in a discussion with the court concerning the use of a uniformed officer as bailiff, prepared and filed a motion for judgment of acquittal, subpoenaed

There is no showing in the record that the trial court made any effort to inform the defendant of the hazards and disadvantages of self-representation. It is defendant's position that this omission was a denial of his constitutional right to the assistance of counsel and that there was no intelligent and knowing waiver of that right.

■ The authority upon which defendant places principal reliance is *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). In that case the court enunciated the following principles. The Sixth and Fourteenth Amendments guarantee that a person brought to trial in any state or federal court must be afforded the right to the assistance of counsel before he can be validly convicted and punished by imprisonment. A defendant in a state criminal trial has a constitutional right to proceed *without* counsel when he voluntarily and intelligently elects to do so. A state may not constitutionally hale a person into its criminal courts and there force a lawyer upon him when he insists that he wants to conduct his own defense. The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense. Although in most criminal prosecutions a defendant could better defend with counsel's guidance than by his own unskilled efforts, the defendant must be free personally to decide whether in his particular case counsel is to his advantage. When a defendant manages his own defense he relinquishes many of the traditional benefits associated with right to counsel. For this reason, in order to represent himself, the defendant must "knowingly and intelligently" forgo those relinquished benefits.

"Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta,* 95 S.Ct. at 2541.

The court also said: "Of course, a State may—even over objection by the accused—appoint a 'standby counsel' to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary." *Faretta,* 95 S.Ct. at 2541.

The situation in the case at bar is an example of what the reported cases classify as "hybrid representation." The defendant and attorney Newberry presented the defense through their combined efforts. Defendant acted as co-counsel with his attorney. He did not act totally pro se.

Federal cases, decided in the wake of *Faretta,* have held that a defendant in a criminal case does not have a constitutional *right* to hybrid representation, *U. S. v. Daniels,* 572 F.2d 535, 540[8] (CA 5 1978); *U. S. v. Bowdach,* 561 F.2d 1160, 1176[26] (CA 5 1977); *U. S. v. Hill,* 526 F.2d 1019, 1024[3] (CA 10 1975),[2] but a trial court, in its discretion, may *allow* hybrid representation. *U. S. v. Olson,* 576 F.2d 1267 (CA 8 1978); *United States v. Pinkey,* 548 F.2d 305 (CA 10 1977); *Maynard v. Meachum,* 545 F.2d

---

medical records, conferred with the defendant concerning the issuance of subpoenas, obtained leave of court for the defendant to confer with defense witnesses, conferred with the defendant "off the record," conferred with the defendant with respect to his dual pleas of not guilty and not guilty by reason of mental disease or defect excluding responsibility, conferred with the court and the prosecutor concerning the instructions, and supervised the offering into evidence of 18 defense exhibits.

Mr. Newberry also prepared and argued the motion for new trial.

**2.** To similar effect are the following state authorities:

*People v. Wheeler,* 68 Cal.App.3d 1056, 137 Cal.Rptr. 791 (1977); *Swinehart v. State,* 376 N.E.2d 486 (Ind.1978); *State v. Johnson,* 586 S.W.2d 437, 443[18] (Mo.App.1979); *State v. Moorefield,* 33 N.C.App. 37, 234 S.E.2d 25 (1977); *State v. McCleary,* 149 N.J.Super. 77, 373 A.2d 400 (1977); *State v. Carter,* 53 Ohio App.2d 125, 372 N.E.2d 622 (1977); *State v. Burkhart,* 541 S.W.2d 365 (Tenn.1976); *Landers v. State,* 550 S.W.2d 272 (Tex.Cr.App. 1977); *Moore v. State,* 83 Wis.2d 285, 265 N.W.2d 540 (1978).

273 (CA 1 1976); *United States v. Bennett,* 539 F.2d 45 (CA 10 1976).

Whether or not a criminal defendant, who has been accorded hybrid representation, may properly complain of the failure of the trial court to warn him of the hazards of self-representation is an issue which has received rare and conflicting discussion in the federal cases.

In *U. S. v. Aponte,* 591 F.2d 1247 (CA 9 1978), a case involving hybrid representation, the court of appeals (in a 2 to 1 decision) reversed a conviction "because the record does not disclose that he knowingly and intelligently waived his right to counsel before electing to represent himself." The court pointed out that only rarely will adequate waiver be found where the record does not contain a specific inquiry by the trial judge into the issue of "intelligent waiver."

In *Maynard v. Meachum,* 545 F.2d 273 (CA 1 1976) a habeas corpus proceeding, the court held that hybrid representation raises the issue of effective waiver of counsel. The court said, at p. 277:

"[W]hatever label is attached to it, the net result was that Maynard had less than the full representation by counsel to which, absent a valid waiver, he was entitled under the Sixth Amendment. . . . We can conceive of no reason why the standard for waiving part of a constitutional right should be different from the standard for waiver of the entire right. Respondent argues, and we agree, that it is within the discretion of a trial court to allow the sort of hybrid arrangement that was adopted in this case . . . . But it does not follow that such an arrangement is the equivalent of full representation by counsel for purposes of waiver; it was apparently not suggested in any of the cases cited by respondent that the defendant's agreement to the arrangement was not knowing and intelligent. On respondent's analysis, the right to counsel is satisfied, regardless of the reality of self-representation, so long as counsel is not formally allowed to withdraw and remains in the courtroom. We do not believe that the protections of this right that have

evolved from *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), can be so casually swept away."

In *Maynard,* however, the court also held that the absence of an explicit bench warning did not *compel* the conclusion that Maynard's waiver of counsel was ineffective. It also held that, in the habeas corpus proceeding, the burden of proof was upon Maynard to establish the invalidity of the waiver.

On the other hand, in *United States ex rel. Konigsberg v. Vincent,* 526 F.2d 131 (CA 2 1975), a case of hybrid representation, the waiver was held to be sufficient although there was no express bench warning. Additionally the court said, at p. 133:

"It seems to us that a case where a defendant is vehemently asserting his right of self-representation is not truly a case of waiver of a constitutional right; it is a decision to assert one constitutional right instead of another."

██ In hybrid representation situations, it is not uncommon for the trial court to administer a warning of the perils of self-representation whether or not the warning is mandatory. See *United States v. King,* 582 F.2d 888 (CA 4 1978) and *United States v. Pinkey,* 548 F.2d 305 (CA 10 1977). Doubtless that is the better practice.

In 1976 the Missouri General Assembly enacted § 600.051 RSMo (Supp.1976) which requires the court to obtain a written waiver of the right to assistance of counsel in criminal cases where defendant may receive a jail sentence or confinement. The statute sets forth information which the written form must contain. In *Peterson v. State,* 572 S.W.2d 475 (Mo. banc 1978) a defendant, *acting pro se,* entered a plea of guilty. The trial court failed to use the written form prescribed by the statute and that failure was held to be reversible error requiring the setting aside of the conviction and the granting of permission to withdraw the plea. The court held that use of the written form has been mandatory since the effective date of § 600.051 (August 13, 1976).

The Eastern District and the Western District of this court have held that where defendant was accorded *hybrid representation*, there was no waiver of the right to counsel and accordingly the trial court did not err in failing to obtain from defendant a written waiver of counsel pursuant to § 600.051. *State v. Tyler*, 587 S.W.2d 918 (Mo.App.1979); *State v. Johnson*, 586 S.W.2d 437 (Mo.App.1979).

In *Tyler* the court said, at p. 923, the trial court "did not permit defendant to waive counsel nor did defendant actually waive counsel."

In *Johnson* the court said, at p. 443:

"The appellant requested to try his case as his own counsel but with the aid of an attorney. The decision allowing appellant to participate in his trial when he [h]as counsel rests within the discretion of the trial court, *State v. Velanti*, 331 S.W.2d 542, 546 (Mo.1960), because he has no 6th Amendment right to participate as co-counsel. *U. S. v. Wolfish*, 525 F.2d 457 (2nd Cir. 1975). *Such dual representation does not constitute either a waiver or an attempted waiver*. *State v. Burgin*, 539 S.W.2d 652, 654 (Mo.App.1976). Since appellant did not waive this right to counsel but proceeded, in the court's discretion, as co-counsel with an attorney's assistance, a written waiver was not necessary. . . . Appellant had the aid of counsel and took advantage of it throughout the trial. *Appellant never waived his right to counsel* and therefore, a written waiver form was not required." (Emphasis added.)

There is a paucity of foreign authorities dealing with the question of whether an express warning of the pitfalls of self-representation is necessary where hybrid representation has been permitted. The warning was held to be unnecessary in *People v. McKinney*, 62 Ill.App.3d 61, 19 Ill.Dec. 250,

378 N.E.2d 1125, 1128 (1978) and *People v. Boswell*, 62 Ill.App.3d 1033, 19 Ill.Dec. 786, 379 N.E.2d 658 (1978). The warning was held to be necessary in *Hamilton v. State*, 30 Md.App. 202, 351 A.2d 153 (1976).

■ This court holds that defendant, having requested and received hybrid representation, did not waive his right to counsel but in fact exercised it, and that the trial court did not err in failing to warn defendant of the perils of self-representation.

Defendant's first contention has no merit.

■ Defendant's second contention is that the trial court erred in submitting instruction 7 to the jury. Instruction 7 is based on MAI–CR 2.32 and is set forth below.[3]

Defendant's complaint concerning instruction 7 is that it includes this language, "except an abnormality manifested only by repeated antisocial conduct." Defendant argues that the quoted phrase lacked evidentiary support and "tended to disparage defendant's defense." The defense to which defendant alludes is that he was not guilty by reason of "mental disease or defect excluding responsibility." That defense was submitted to the jury by instruction 6.

MAI–CR 2.32 contains three "parenthetical matters," the third of which is: ("except an abnormality manifested only by repeated antisocial conduct.")

The second of the Notes on Use to MAI–CR. 2.32 reads:

"2. The three parenthetical matters deal with special situations, the last of which is sociopathy or, as it is sometimes known, psychopathy. See V.A.M.S., Section 552.-010. All should be omitted unless the evidence justifies calling them to the jury's

---

3.        "INSTRUCTION NO. 7

"The phrase 'mental disease or defect,' as used in these instructions, means any mental abnormality, regardless of its medical lable (sic), origin or source, except an abnormality manifested only by repeated antisocial conduct.

"In determining under other instructions given to you, whether the defendant had a mental

disease or defect at the time of the commission of the offense charged against him and, if so, the extent and effect of it, the jury may take into consideration all of the facts, circumstances and opinions given in evidence. However, it is for the jury alone to decide this issue under the law as given to you in these instructions."

attention. If there is evidence justifying reference to any one or more of such matters, it or they should be included in the instruction."

Robert Kennedy, M.D., a defense witness, testified that his examination of the defendant in 1977 led to the diagnosis that the defendant was "a sociopathic personality, antisocial type." Dr. Kennedy testified that an examination of the defendant by a psychiatrist resulted in the diagnosis: "Sociopathic personality disorder of antisocial type." Henry Bratkowski, D.O., another defense witness, testified that the defendant had an "antisocial personality disorder." Han Hulstra, M.D., a witness for the state, testified that the defendant had "a personality disorder of the antisocial type—a person who does not abide by the law, has difficulties with the law, frequently gets into legal trouble."

Defendant's wife, a defense witness, testified concerning two incidents which took place in California and which resulted in the arrest of the defendant by police. One of these incidents involved the defendant "robbing a place" and the other incident involved the defendant "shooting across the road."

The foregoing evidence, coupled with the state's evidence concerning the instant offense, justified the inclusion in instruction 7 of the language under attack. *United States v. Thomas*, 536 F.2d 274, 277[3] (CA 8 1976); *United States v. Austin*, 533 F.2d 879, 885[2] (CA 3 1976); *People v. Foster*, 43 Ill.App.3d 490, 2 Ill.Dec. 1, 356 N.E.2d 1288, 1292[7, 8] (1976).

Defendant's second contention has no merit.

The judgment is affirmed.

All concur.