STATE of Missouri,
Plaintiff–Respondent,

v.

Terry CREWS, Defendant–Appellant.

No. 41161.

Missouri Court of Appeals,
Eastern District,
Division Four.

Sept. 9, 1980.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 17, 1980.

Application to Transfer Denied
Dec. 15, 1980.

Robert C. Babione, Public Defender, Mary K. Wefelmeyer, Asst. Public Defender, St. Louis, for defendant–appellant.

John D. Ashcroft, Atty. Gen., Paul R. Otto, Asst. Atty. Gen., Jefferson City, George A. Peach, Circuit Atty., St. Louis, for plaintiff–respondent.

SMITH, Presiding Judge.

Defendant appeals from his conviction by a jury of robbery first degree, kidnapping, and armed criminal action and resultant sentences by the court under the second

offender act of 30, 10, and 30 years to be served consecutively. We affirm the convictions for robbery and kidnapping and reverse the conviction for armed criminal action.

The evidence supported a factual finding that defendant and his brother robbed the victim at gunpoint, placed her into an automobile against her will, took her into two other counties where other offenses were committed, and returned her to the City of St. Louis some two and one–half hours later. The victim was a school teacher seven months pregnant at the time. Defendant testified to an alibi and called witnesses to support that claim.

■ On appeal defendant raises four points, none of them relating to the sufficiency of the evidence. It is first contended that the trial court erred in allowing the defendant to represent himself and in failing to have a written waiver of counsel signed by defendant pursuant to Sec. 600.-051, R.S.Mo.1978. Defendant did request that he be allowed to represent himself without counsel. This request was not granted by the court. Rather defendant was allowed to try the case with counsel available to assist and advise him. This was permitted only after extensive questioning by the Court during which the hazard of self–representation was explained thoroughly to defendant, and during which defendant demonstrated a fairly complete rudimentary understanding of legal and courtroom procedures. Defendant had available to him throughout the trial the assistance of counsel which he utilized freely and frequently. Counsel performed certain legal work such as obtaining subpoenas. In addition he approached the bench and appeared in chambers with defendant during conferences, advised the court on occasion of the legal basis for defendant's objections and contentions, conferred with defendant concerning objections and questioning of witnesses, explained to defendant the instructions which defendant could request be given, prepared and argued the motion for new trial, argued the question of the sentences to be imposed, and prepared

and filed the notice of appeal. The representation accorded to defendant is frequently referred to as "hybrid." *State v. Edwards*, 592 S.W.2d 308 (Mo.App.1979). In essence defendant served as co–counsel with an attorney. He had the opportunity to actually try the case with the assistance throughout of counsel.

In *Peterson v. State*, 572 S.W.2d 475 (Mo. banc 1978), the Supreme Court held that Sec. 600.051 requires that a written waiver of the assistance of counsel be obtained and that the failure to obtain such a written waiver is prejudicial error. In *State v. Burgin*, 539 S.W.2d 652 (Mo.App.1976); *State v. Johnson*, 586 S.W.2d 437 (Mo.App.1979); and *State v. Tyler*, 587 S.W.2d 918 (Mo.App. 1979) the courts held that hybrid representation is not a waiver of counsel but on the contrary is the utilization of the assistance of counsel and Sec. 600.051 is not therefore applicable. Defendant here accepted the hybrid representation and the court did not err in failing to obtain a written waiver of counsel.

■ We need not determine whether bench warnings of the danger of self–representation are required in hybrid representation cases, or whether the same requirement of "intelligent and knowing waiver" needs to be met as that required in no–counsel cases. *See State v. Edwards, supra.* Suffice it to say here that the extensive warnings and questioning by the court and defendant's responses thereto establish that defendant was adequately warned and made his choice with full knowledge and understanding of what he was doing. *State v. Nicolosi*, 588 S.W.2d 152 (Mo.App.1979). We find no merit in defendant's first point.

Defendant's second point we set forth verbatim:

"The trial court erred in its order of September 18, 1978 wherein it found that the defendant had mental fitness to proceed with the trial. This finding was based on a psychiatric evaluation of August 28, 1978 that did not comply with the requirements of Chapter 552 of the Revised Statutes of Missouri, Supp.1971. This violated defendant's rights under the

Fifth, Sixth, and Fourteenth Amendments of the United State Constitution and under Article I, Section 10 and 18(a) of the Missouri Constitution."

The point arises in the following context. On May 19, 1978, defendant, represented by an appointed attorney, filed a motion for psychiatric examination. That motion was denied. On July 28, 1978, defendant, now represented by retained counsel, filed a second motion for psychiatric examination. At the hearing on that day defendant's attorney stated that shortly before a previous trial setting defendant had cut himself on the arm in an attempt to commit suicide.[1] Counsel further stated he had had difficulty obtaining information from defendant although he seemed willing to cooperate; that defendant appeared to have difficulty thinking about or concentrating on the case; that defendant had difficulty remembering the evening on which the offense occurred. Counsel further indicated that he had been told that defendant had some history of glue sniffing, which counsel understood could cause brain damage. Counsel did testify that he had examined a report of mental examination, made in May 1977 in another case, which had found defendant mentally competent to stand trial. Counsel stated that defendant had not wanted that medical examination, had not cooperated in it and had not received an electroencephalogram because of his non-cooperation. On cross-examination counsel stated that the 1977 report indicated that defendant was anti-social. He also admitted that defendant had an awareness of the charges against him; that the absence of communication by defendant had been recent; that a month before the hearing defendant had been tried on another charge arising from conduct occurring at approximately the same time as the charges in this case and that in that case defendant had taken the stand and testified. Counsel also stated that defendant had made statements about hanging himself. After the hearing on August 22, 1978, the court entered the following order:

"The Court having been informed that the above–named defendant while in confinement has inflicted injury to his own person, therefore, the court, over the objections of the State, hereby sustains the defendant's motion for a second psychiatric examination and evaluation.

"Causes ordered continued at the request of the defendant.

"The Court orders that Dr. Bun Tee Co, Jr. Director of Forensic Services, Malcolm Bliss Mental Health Center or a designee of his staff proceed to the City Jail at 124 S. 14th Street, St. Louis, Mo, at a time satisfactory to Dr. Co to conduct a preliminary evaluation with the purpose of determining whether it is necessary to send the defendant to Fulton State Hospital for a second psychiatric evaluation or whether said examination and evaluation may be performed on an out–patient basis at Malcolm Bliss Mental Health Center."

On September 18, 1978 the court entered the following order:

"Pursuant to a prior Order of the Court dated August 22, 1979, (sic) a report reflecting the psychiatric evaluation of the defendant dated August 28, 1978 signed by Dr. Bun Tee Co, Jr., Director, Forensic Services, Malcolm Bliss Health Center, has heretofore been filed with the Court on September 1, 1978.

"Accordingly, based upon this report dated August 28, 1978 and the report of the psychiatric examination and evaluation performed at the Fulton State Hospital dated June 15, 1977 in a cause of action which was pending in St. Louis County and said report dated June 15, 1977 having been admitted into evidence in Cause # 77–2281–A, and the Court further taking notice of the entire record

---

1. The trial court examined the scars from this attempt. At the argument on the motion for new trial the court stated it had placed no credibility to this "attempt," feeling that the scar location did not indicate a bona fide suicide attempt but rather an attempt to obtain a continuance or to come under "Drope" (*Drope v. Missouri*, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975).

finds on the basis of the psychiatric reports dated August 28, 1978 and June 15, 1977 that the above–named defendant has mental fitness to proceed.

"Causes removed from Mental Docket and set for trial on Monday, October 23, 1978 in Division # 24."

Trial began on the case on November 13, 1978. No reference to a mental examination or to defendant's competency appears in the record after the order of September 18, 1978, until the motion for new trial.

 Defendant's point relied on is inadequate in specifying in what way the trial court erred. Initially, it fails to explain in what way the psychiatric evaluation of August 28 did not comply with the requirements of Chapter 552. This becomes even more critical because appellant has not included as a part of the record before us either that report or the earlier evaluation of June 1977. Nor are we advised in what way the actions of the court violated defendant's various constitutional rights. Inasmuch as the question of competency to stand trial cannot be waived by going to trial (*State v. Clark*, 546 S.W.2d 455 (Mo. App.1977) [14–16]) and is of fundamental constitutional import (*Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966)) we will attempt to address the issues which we believe are arguably before us. These appear to be two–one procedural, the other substantive.

 The procedural question is whether the initial order of August 22 mandated an evaluation other than that performed by Dr. Co in the City Jail. We must presume that the two psychiatric reports which are not before us supported the court's decision that defendant had the mental competency to stand trial. Did the wording of the August order lead the defendant to believe that a further evaluation would be made other than Dr. Co's and thereby preclude him from challenging the Co evaluation under the provisions of Sec. 552.020.4 & 6?[2] On the face of the order it appears the court had determined that a further evaluation would be made and that the Co examination was limited to a determination of where the examination would be conducted, not whether it would be conducted. The prosecutor and the court stated at the hearing on the motion for new trial that they believed the order did not mandate an evaluation but merely provided for a preliminary determination of where the evaluation should be conducted if the court decided that such an evaluation was needed. The oral justification or reason given by the court is not a part of the order and cannot be used to contradict the order. *Green v. First National Bank of Kansas City*, 236 Mo.App. 1257, 173 S.W.2d 763 (1943). On the other hand it is also apparent that the August order did not contain all of the specifics required by Sec. 552.020.2 and was not therefore the order mandated by that section. We do not believe it unreasonable for defendant and his attorney to interpret the order as a preliminary to a second order directing a psychiatric evaluation and to thereby conclude that no response was necessary to the Co report even if defendant wished to contest it or desired another examination. That does not, however, close the matter.

---

2. 552.020 R.S.Mo.1978

"4. The clerk of the court shall deliver copies of the report to the prosecuting or circuit attorney and to the accused or his counsel. The report shall not be a public record or open to the public. Within five days after the filing of the report, both the accused and the state shall, upon written request, be entitled to an order granting them an examination of the accused by a physician of their own choosing and at their own expense. If such examination is ordered, a report of the examination made by the examining physician shall be furnished to the court and to the opposing party.

. . . . .

6. If neither the state nor the accused nor his counsel contests the opinion referred to in subsection 3, subdivision (3), of this section relative to fitness to proceed, the court may make a determination and finding of record on the basis of the report filed or may hold a hearing on its own motion. If any such opinion is contested the court shall hold a hearing on the issue. The report or reports may be received in evidence at any hearing on the issue but the party contesting any opinion therein relative to fitness to proceed shall have the right to summon and to cross–examine the physicians who rendered such opinion and to offer evidence upon the issue."

Upon entry of the September order denying a mental evaluation, it became apparent that the interpretation which defendant now contends he placed upon the August order (and which we find reasonable) was not the same as that placed upon it by the court. Yet at no time prior to the conclusion of the trial two months later was this difference in interpretation called to the trial court's attention. No effort was made to reopen the September order for reconsideration, to request another examination under Sec. 552.020.4, or to contest the opinion as provided in Sec. 552.020.6. There is nothing in the record to indicate that such an effort would have been unsuccessful or that the trial court would have been unwilling to reexamine its September order in light of the difference of opinion generated by its August order. Judicial procedures are not a game, certainly not when they involve matters as important as competency to stand trial. It was incumbent upon defendant to call the alleged inconsistency in the two orders to the court's attention before trial if he felt aggrieved thereby. His failure to do so precludes him from now attacking the procedure followed or to take advantage of the inconsistency in the orders.

The substantive issue reaches the more basic question of whether the evidence before the trial court mandated a competency evaluation whatever procedure was followed. Sec. 552.020.2 requires such an evaluation "whenever any judge ... has reasonable cause to believe that the accused has a mental disease or defect excluding fitness to proceed ...." This is a continuing obligation of the trial court throughout the criminal proceeding. *State v. Clark, supra,* [14–16]. We must look therefore to the entire record to determine whether it establishes reasonable cause to believe that defendant lacked competency to proceed. We do not find it does. The court's order of August does not of itself establish such cause. As we said in *Jones v. State,* 505 S.W.2d 96 (Mo.App.1974) [1–3]:

"The mere fact that a trial judge grants, on motion, a psychiatric examination does not automatically establish that a bona fide doubt exists as to the defendant's competency to stand trial."

Simply out of an abundance of caution, a judge may grant such an examination where defendant has failed to establish specific reasonable cause to believe a mental disease or defect exists. We also must presume that the two psychiatric reports before the court did not establish "reasonable cause." The purported suicide attempt was discounted by the court, who viewed the scars, as not bona fide. The description of the location of the scars stated by the judge would support that assessment.[3] The order of August did not state that defendant had attempted suicide but only that he had inflicted injury upon himself. The statement of a history of glue sniffing was unsupported by anything except counsel's statement admittedly based upon hearsay. Furthermore, what that history consisted of—one episode, occasional episodes or constant episodes—was not stated, nor was there any evidence of what if any effect this history might have on his mental state other than counsel's understanding it might have some. Nor does it appear whether this history predated the 1977 evaluation and was considered therein. Defendant had been incarcerated five months after the prior examination and had remained incarcerated through the trial and there was no indication that he was presently "glue–sniffing." Nor was the alleged inability to communicate with counsel dealt with specifically. The court was also aware that defendant had shortly before testified in another case in his own behalf concerning an alleged crime occurring at approximately the same time as the ones on trial. Immediately

---

**3.** "I gave no weight to this so–called suicide attempt at all because of the area where the cuts were, one being on the top of the bone, ... on the upper portion of the left wrist, and the other being in the muscle area of the left arm. I think that anyone who makes a bona fide suicide attempt can get closer to the area where some chance of success might be." Defendant did not dispute the factual statement of the location of the scars although given that opportunity.

prior to trial the court questioned the defendant at length in regard to his self–representation. His answers demonstrated full understanding of the proceedings and a better than average layman's understanding of the legal and courtroom procedures. Defendant's handling of the case through trial demonstrated an acute understanding of the testimony, many of the rules of evidence, legal principles and courtroom procedure and protocol. His testimony gave detailed and precise information on his activities and whereabouts on the night of the crimes. His questioning of witnesses, both his and the State's, while less fulsome than might have been a lawyer's, demonstrated his understanding of the points he wished to make and his ability to make them. He conferred frequently throughout the trial with his co–counsel and in those few instances where these conferences are of record demonstrated his understanding of the advice or explanation given.

■■■ The test of competency to stand trial is whether the defendant has sufficient ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him. *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960); *Martin v. State*, 558 S.W.2d 701 (Mo.App. 1977) [4]; *Jones v. State, supra* [1–3]. On the record before us, we find no basis for concluding that reasonable cause existed to believe defendant lacked that competency. *State v. Haley*, 603 S.W.2d 512 (Mo.1980). The record strongly supports the opposite conclusion.

■■■ Defendant's next point is that the court erred in utilizing MAI–CR 2.70 in this case because the case included a charge of armed criminal action. We acknowledged in *Simms v. State*, 568 S.W.2d 801 (Mo.App.1978) that MAI–CR 2.70 contained the possibility of confusion in an armed criminal action case, but held that no prejudice existed because the instructions read together properly instructed the jury. The same is true here. In *State v. Tilley*, 569 S.W.2d 346 (Mo.App.1978) we upheld the use of a modified MAI–CR 2.74 in an armed criminal action case against a similar attack. *Tilley* does not represent, as defendant contends, an implied overruling of *Simms* or a judicial direction to utilize 2.74. Both cases recognized that the mandatory pattern instructions do not contain an instruction in the 2.70 series (mandatory in multiple count cases) which is designed to cover armed criminal action cases. Both *Simms* and *Tilley* recognized, therefore, that inasmuch as some instruction on multiple counts is required and none is truly applicable, no prejudicial error exists if the instruction utilized, combined with the other instructions and verdict forms, properly advises the jury of what it must find. Those two cases did not establish any particular method of handling this vexing problem, but only held that the method utilized in each of those cases was not prejudicially erroneous.

Defendant's next point is that the trial court erred in failing to declare a mistrial when a police officer witness for the State referred to an oral statement given by defendant which had been suppressed. The matter occurred during defendant's cross–examination of the witness. Defendant had made a video–tape confession which was admitted into evidence. He also gave an oral statement prior to the video tape which the court suppressed because not revealed on discovery. The questioning and answers of which defendant complains were as follows:

"Q. Before this video tape was played you did discuss with me about this statement, didn't you?

A. Correct, sir.

Q. Who all was present at that interrogation?

A. I don't understand, what interrogation? The video tape or your statement prior to making the video?

Q. What I'm talking about is among you who was the other officers that made the promises that if I'd say what they wanted to say–?

A. I never made you any promises.

Q. Did you learn anything from this statement that you didn't already know?

A. I don't understand the question.

Q. Was there anything in this statement that there wasn't in the police report?

A. Yes.

Q. What was that?

A. You stated to me that you needed *money for your lawyer, that you* had a murder charge pending in St. Louis County."

Mistrial was immediately requested. In chambers, the witness, under oath, stated that when the word "statement" was used, he understood it to mean the oral statement given before the video–taped confession. The officer did not know the oral statement had been suppressed.[4]

The trial court offered to instruct the jury to disregard the officer's answer and the prosecution offered to stipulate that defendant had been acquitted of the murder charge. Both of these offers were refused. We find no error.

It was stated in *State v. Stenner*, 591 S.W.2d 123 (Mo.App.1979) l.c. 125:

"This constitutional safeguard [inadmissibility of a failure to make statement] (and others involving the admissibility of evidence as firmly fixed in legal principles) is subject to the exception that the constitutional burden of inadmissibility is waived *where no objection is made* to the evidence *or such evidence is introduced or injected into the trial by the defense.* The factual background of each case as to the trial circumstances and evidence complained of is necessarily varied and only rarely similar, and each case must be separately evaluated against the foregoing principle and the recognized exceptions where waiver of the constitutional fault appears." (Emphasis Supplied).

Here the officer was unaware that the oral statement had been suppressed. The State did not question him about it. In response to defendant's initial questions, the officer differentiated between the term "video tape" and "statement" and treated them as two different things. Defendant utilized the term "statement" in his question which term the officer had previously made clear he utilized to refer to the oral statement, not the video tape. The officer's answer was responsive to the question posed by defendant. The matter complained of was injected into the case by defendant and he is in no position to complain of the testimony. The trial court held the testimony to be invited and denied the mistrial. Defendant refused any other relief.

Defendant's final point, raised by pro se brief, is that the armed criminal action conviction cannot stand in view of *Sours v. State*, 593 S.W.2d 208 (Mo. banc 1980) (Sours I). The Supreme Court has reaffirmed its conclusion that a conviction of armed criminal action and the underlying felony constitutes a *violation of the rule* against double jeopardy. *Sours v. State*, 603 S.W.2d 592 (Sours II) (Mo. banc 1980). The conviction for armed criminal action must be reversed.

Judgment of conviction for armed criminal action reversed; judgment of conviction of robbery first degree and of kidnapping affirmed.

SATZ and SIMON, JJ., concur.

---

4. The oral statement was suppressed shortly before the officer took the stand. The officer was not in the courtroom at the time of the order suppressing the statement.