**Mendel Louis COOPER, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 10126.**

United States Court of Appeals
Tenth Circuit.

Nov. 27, 1968.

See also D.C., 279 F.Supp. 253.

Peter H. Ney, Englewood, Colo., for appellant.

Milton C. Branch, Asst. U. S. Atty., Denver, Colo. (Lawrence M. Henry, U. S. Atty., Denver, Colo., on the brief), for appellee.

Before PHILLIPS, HILL and SETH, Circuit Judges.

HILL, Circuit Judge.

Appellant was indicted on two counts of violating the Universal Military Training and Service Act (now the Military Selective Service Act of 1967, 50 App. U.S.C. § 451 et seq. (Supp.1967)). The first count charged a wilful mutilation of a Selective Service registration certificate in violation of 50 App. U.S.C. § 462(b) (3) while the second count alleged a failure to maintain possession of the certificate in violation of 50 App. U.S.C. § 462(b) (6). After the jury returned a verdict of guilty as to both counts, the second count was dismissed following an appropriate motion by the Government. The court determined that appellant was suitable for handling under the Federal Youth Corrections Act, 18 U.S.C. § 5005, et seq., and committed him to the custody of the Attorney General for observation and study as provided by 18 U.S.C. § 5010(e). The Youth Correction Division was directed to tender its report and recommendations to the court within ninety days with the appellant to be returned to the court at that time for such final disposition as might then appear appropriate.

The first of several points raised on appeal relates to three instances of alleged misconduct on the part of the trial judge in conducting the trial. Appellant had obtained a duplicate registration certificate, commonly referred to as a draft card, after having intentionally burned his original certificate. The duplicate certificate was introduced into evidence by counsel for the appellant who prefaced the certificate's admission with the remark that: "And also, making a record that we are taking it away from Mr. Cooper so he is not subject to any prosecution." The trial judge responded: "That's ridiculous. We will strike that comment from the record." Defense counsel promptly moved for a mistrial which was denied. Thereafter, while in the process of instructing the jury, the trial judge indicated that the jury was to disregard any statements from the bench of a derogatory nature.[1]

---

1. The jury was instructed as follows:
"In saying to Mr. Gerash [defense counsel] that his comment was ridiculous, I say to you that, this was probably given in some heat but still I must do some characterizing at times. The important thing, is you are not to take it as gospel. Merely because as someone suggested, I am performing a function here as a person and as a man I have weaknesses as everyone else has, and the only area in which you are required to follow me and consider what I say that is immutable so to

A second incident of alleged judicial misconduct occurred during the cross-examination of one of the Government witnesses. The court questioned the relevancy of the particular line of questioning being pursued, whereupon defense counsel expressed a desire to discuss the matter out of the presence of the jury. The trial judge then indicated that the matter would be pursued in chambers and in doing so apparently made certain physical gestures which, it is contended, conveyed the impression to the jury that he intended to punish defense counsel in some manner. The final occurrence of misconduct relates to the manner in which the trial judge admonished a defense witness to cease interfering with the court's intended conduct of the proceedings.[2]

We find no merit in the contention that the conduct of the trial judge was sufficiently prejudicial to deny the accused a fair and impartial trial. While indications in the presence of the jury that statements of the defense counsel are ridiculous, are not to be encouraged, such conduct certainly does not constitute reversible error. Petersen v. United States, 268 F.2d 87, 88 (10th Cir.1959). Indeed, that incident and the others discussed above, were no more than displays indicative of a firm control of the proceedings and fall well within the reasonable bounds within which a trial judge may act. Inland Freight Lines v. United States, 191 F.2d 313 (10th Cir.1951).

Appellant next contends that his sentence constitutes a cruel and unusual punishment in violation of the Eighth Amendment. Although the present sentencing order merely provides for his commitment to the Attorney General pending observation and study, appellant is, however, subjected to potential incarceration for a period of five years or more. Accordingly, we will view this contention as if the maximum sentence had been imposed. In doing so we note that a sentence within the maximum prescribed by law will be deemed to be cruel and unusual only when such a conclusion is clearly required. Hedrick v. United States, 357 F.2d 121 (10th Cir.1966). This is in recognition of the fact that the fixing of an adequate penalty is properly a matter of legislative concern. Hence, it is only when it can be unhesitatingly said that the legislature has abused its discretion that the prescribed penalty will be abrogated by the court. Bailey v. United States, 74 F.2d 451 (10th Cir.1934).

The thrust of appellant's argument is that he is being subjected to imprisonment for the crime of mutilating a card which, both in a monetary and regulatory sense, is of little value to the Government. Acknowledging, for the purposes of argument, the legitimate interest of the Government in maintaining an administrative system to classify and conscript manpower for military service, appellant asserts that the mutilation of a registration certificate can in no way frustrate or impede this objective. However, the Supreme Court rejected essentially the same proposition, although in a different context, in United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). There the Court after discussing at length the many functions performed by the regis-

---

speak, is when I charge you on the law. It is your function after all to decide the case overall without any suggestion, consciously or unconsciously, intentionally or unintentional, from me. I certainly do not wish to influence your decision. This is something I have a very deep feeling on and so I say to you that you must exercise your own responsibility because it's only by your doing it in this manner does the jury system really operate."

2. During the course of the examination of the witness, a colloquy occurred between court and counsel, both forgot the question having been asked of the witness. When the witness volunteered to refresh their recollection the judge declared: "If we need any help from you we will call on you. Meanwhile, we will have a new question. Is that clear to you?"

**74**

tration certificates, concluded that: "Congress has a legitimate and substantial interest in preventing their wanton and unrestrained destruction and assuring their continuing availability by punishing people who knowingly and wilfully destroy or mutilate them." It follows that the penalty here under attack bears a rational connection to the evil at which it is directed and therefore is not manifestly cruel and unusual.

■ Another point raised on appeal concerns an error in the original Order of Commitment for Observation and Study. Subsequent to the conviction of the appellant on both counts of the indictment, the second count was dismissed upon motion by the Government. Nevertheless, the court in sentencing the appellant pursuant to the Federal Youth Corrections Act, indicated in the order that the appellant was guilty on both counts. This was simply a clerical error and was rectified by the court's later amendment of the order as provided by Rule 36, F.R.Crim.P.

■ Finally, appellant, by a series of pre-trial motions, sought a dismissal of the indictment. These motions all attacked the constitutionality of the Universal Military Training and Service Act, in that such Act operated in violation of various treaties and agreements entered into by the United States. All of such motions were summarily overruled by the trial judge and appellant urges error by such action. Little need be said on this point because it is so patently without merit. It is not the function of the judicial branch of the Government to entertain litigation challenging the legality or wisdom of the executive branch in sending troops abroad or to any particular region.[3] The point seeks judicial review of political ques-

tions not within the jurisdiction of the courts and is clearly not a defense to the charge in this case.[4]

Affirmed.

---

3. Johnson v. Eisentrager, 339 U.S. 763, 70 S.Ct. 936, 94 L.Ed. 1255 (1950).

4. Luftig v. McNamara, 126 U.S.App.D.C. 4, 373 F.2d 664 (1967) cert. den. 387 U.S. 945, 87 S.Ct. 2078, 18 L.Ed.2d 1332;

Mora v. McNamara, 389 U.S. 934, 88 S.Ct. 282, 19 L.Ed.2d 287; United States v. Mitchell, 369 F.2d 323 (2d Cir. 1966) cert. den. 386 U.S. 972, 87 S.Ct. 1162, 18 L.Ed.2d 132, reh. denied 386 U.S. 1042, 87 S.Ct. 1477, 18 L.Ed.2d 616.