**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Arthur Eugene PINKEY,
Defendant-Appellant.**

**No. 76–1254.**

United States Court of Appeals,
Tenth Circuit.

Submitted Dec. 8, 1976.

Decided Jan. 17, 1977.

Stephen M. Munsinger, Asst. U. S. Atty., Denver, Colo. (James L. Treece, U. S. Atty., Denver, Colo., on the brief), for plaintiff-appellee.

Jorge E. Castillo, Denver, Colo. (Richard H. Hill, Denver, Colo., on the brief), for defendant-appellant.

Before McWILLIAMS, BREITENSTEIN and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

Arthur Eugene Pinkey was charged in a four count indictment, tried to a jury and found guilty of using the United States mails to perpetrate a scheme to defraud and obtain money, all in violation of 18 U.S.C.A. § 1341.

Pinkey, who proceeded to defend the charges *pro se,* with the "stand-by" advice of a Public Defender at trial, does not challenge the sufficiency of the evidence. Accordingly, we shall relate the factual setting as succinctly as possible.

Pinkey was incarcerated in the Colorado State Penitentiary when the charged offenses occurred. At trial the Government called thirteen witnesses and presented twelve exhibits which were admitted in evidence. The crux of the charges is that Pinkey wrote nearly identical letters from the penitentiary to four widowed ladies residing in the State of Colorado after he had

read of the deaths of their husbands from newspaper obituary accounts. Pinkey wrote them that he was a friend of the decedents; that he had been jailed with them either in "Denver County Jail" or the "Jefferson County Jail" after the decedents had been arrested "for being under the influence [of] alcohol"; that he had loaned them money to "get out of jail" which had not been repaid; and that he wished to have them send him "at least" $30.00 of the $75.00 he had loaned their respective husbands by money order "as soon as possible" because he was to leave for college in October of 1975. In truth, Pinkey did not know the decedents nor did he loan any of them money.

Before the trial commenced, the court fully and completely advised Pinkey of his right to counsel. The judge recommended that Pinkey avail himself of competent court appointed counsel in view of the fact that mail fraud cases are often complicated and technical. [R., Vol. I, pp. 2, 3.] Pinkey responded that he wished to represent himself with counsel present and available simply to advise him. He then volunteered that he intended to testify, whereupon his counsel advised the court that he had discussed the matter with Pinkey and that he (counsel) agreed that Pinkey's testimony was "relevant, material and necessary." [R., Vol. I, p. 4.] In Pinkey's opening statement to the jury, immediately following that of the prosecutor, he remarked, *inter alia,* that ". . . as far as the letters, the money order, and this type of thing, *I can prove that I never wrote these letters . . .*" [R., Vol. I, p. 13] At trial, Pinkey voluntarily testified. He then acknowledged writing the letters as "just an idea" but he denied mailing them. There was substantial evidence otherwise.

During the court's voir dire examination of the jurors, Pinkey hand printed on a yellow legal-sized sheet three questions which he wished to have the judge ask the jurors. These questions were written in the presence of the jurors and submitted to the trial judge. These handwritten questions

were later introduced in evidence by the Government, at the suggestion of the court.

A Mr. Verle Truman testified as the Government's expert on questioned documents, both with regard to comparison and identity of handwriting and typewriting. Truman was then employed at the Western Regional Postal Inspection Service's Crime Laboratory at San Bruno, California. He gave detailed expert testimony which tied Pinkey to the documents then in evidence, which included the letters, envelopes, etc., offered and admitted during the Government's case-in-chief. Truman specifically and unequivocally identified the handwriting on the exhibits as that of Pinkey. He demonstrated the identification technique by the use of "blow up charts."

When Pinkey testified, he stated that he had written the respective letters (contrary to that which he stated he would prove in his opening statement) but he denied mailing them. He contended that he had placed them in a "box" in his cell; that they were nothing more than "just an idea" on his part; and that someone caused the letters to be taken out of the box and placed in the mail. These contentions, we hold, had been effectively—and overwhelmingly—refuted by the Government's evidence.

On appeal, Pinkey contends that the trial court erred in (1) denying him a fair trial by having suggested to the United States Attorney (out of the presence of the jury) that the handwritten suggested voir dire questions prepared by Pinkey should be furnished to the Government's handwriting expert for handwriting analysis, said analysis forming the basis of his opinion and (2) denying Pinkey's right to represent himself by suggesting to the United States Attorney that the aforesaid handwritten voir dire questions be furnished to the handwriting expert for analysis.

I.

Pinkey's contentions on appeal will be treated and considered jointly in view of the fact that both relate to the same alleged trial court error involving the additional testimony of the expert witness, Tru-

man. At the conclusion of Truman's direct testimony as a Government witness, the following colloquy occurred out of the presence of the jury:

THE COURT: These proceedings are being had outside the presence of the jury. I do invite your attention, Mr. Waters, to the fact—and I don't know if you and Mr. Truman are the least bit interested in it—but I do invite your attention to the fact that this being a pro se case, the Defendant submitted here in open court in the presence of the jury earlier today certain samples of his printing. It's available here if Mr. Truman would like to compare it. The jury saw these samples prepared.

MR. WATERS: Thank you, Your Honor.

THE COURT: They are here and we'll take a recess. They are here, Mr. Truman, if you would like to look at them.

MR. WATERS: Thank you, Your Honor.

[R., Vol. I, pp. 86, 87.]

Following the above exchange, the Government (through Mr. Waters) caused to have the three voir dire questions which had been hand printed by Pinkey on a yellow sheet marked as Government Exhibit 12c. When the jury was returned, the Government moved the admission of the exhibit after Mr. Truman had identified the writing thereon as that of Pinkey by expert comparison. Pinkey did not object to the admission of Exhibit 12c. Furthermore, he did not cross-examine Truman relative to the identification, even though the court specifically inquired of Pinkey whether he wished to object or cross-examine. After the aforesaid re-direct examination of Truman was completed, the Government rested.

Pinkey voluntarily testified in his own defense. He insisted that even though he wrote the letters to the widows with the "idea" of deceiving them in order to obtain some money that he placed each of the letters in a box in his cell, and that he did not mail them. He contended "the officers mailed them . . . It was all a set-up, and I'm just an innocent victim."

## II.

■ During oral arguments on appeal, counsel for Pinkey contended that the trial court's suggestion that the prosecutor examine the Government's handwriting expert with regard to comparison analysis of the writings on documents then in evidence (and with regard to which the expert had already testified) and the hand printed voir dire questions written by Pinkey thereafter handed to the judge, constituted plain error because (a) it denied Pinkey a fair trial by displaying the bias and prejudice of the trial judge toward Pinkey and (b) it compelled Pinkey to testify in his own defense as a result of the expert witness' testimony on re-direct examination. We find no merit in either contention. The record reflects that the trial court was concerned for and steadfast in protecting Pinkey's rights at all stages of the proceeding.

■ In the administration of the criminal justice system, the trial judge has the obligation of safeguarding the rights of the accused while at the same time protecting the interests of society. The adversary nature of criminal proceedings does not prohibit the trial judge from taking proper steps to aid and assist the jury in the truth finding quest leading to the proper determination of guilt or innocence. In the promotion of this goal, the trial judge has an obligation, on his own initiative, at proper times and in a dignified, and impartial manner, to inject certain matters into the trial which he deems important in the search for truth.

In *Quercia v. United States,* 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321 (1933), the trial judge instructed the jury relative to the rules of innocence and reasonable doubt; and he instructed that expressions of opinion on the evidence by the court are not binding on the jury and should be disregarded if the jury believes the evidence indicates otherwise. The judge then expressed his opinion that "I think that every single word that man said, except when he agreed with the Government's testimony, was a lie." The judge's opinion was attrib-

uted primarily to the defendant's mannerism of wiping his hands as he testified. Following the above observation, the court again instructed the jury that his opinion was not binding and that if the jury should not agree ". . . it is your duty to find him not guilty." The defendant was convicted. The Supreme Court reversed, based primarily upon the trial judge's statement of the defendant's lack of credibility predicated upon his mannerisms rather than any analysis of the evidence. For purposes here, however, this language from the opinion is pertinent:

In a trial by jury in a federal court, the judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct and of determining questions of law. *Herron v. Southern Pacific Co.,* 283 U.S. 91, 95, 51 S.Ct. 383, 75 L.Ed. 857. In charging the jury, the trial judge is not limited to instructions of an abstract sort. It is within his province, whenever he thinks it necessary, to assist the jury in arriving at a just conclusion by explaining and commenting upon the evidence, by drawing their attention to the parts of it which he thinks important; and he may express his opinion upon the facts, provided he makes it clear to the jury that all matters of fact are submitted to their determination. 289 U.S., at 469, 53 S.Ct. at 698.

In *Massey v. United States,* 358 F.2d 782 (10th Cir. 1966), *cert. denied,* 385 U.S. 878, 87 S.Ct. 159, 17 L.Ed.2d 105 (1966), this Court said, *inter alia* :

The appellant contends that the trial judge participated too actively in the conduct of the trial, *especially in suggesting necessary proof to the prosecuting attorney.* This court has recently stated, in *Ayash v. United States,* 352 F.2d 1009 (10th Cir. 1965) that:

". . . The trial Judge is not a mere moderator or umpire in the trial of a case in federal court, and, within reasonable bounds, he has the right to participate in eliciting the truth. He should, however, be careful not to become an advocate for any of the parties. (p. 1010.)"
358 F.2d, at pp. 786, 787.

Analogous to the above decisions is this statement from *Gardner v. United States,* 283 F.2d 580 (10th Cir. 1960):

. . . appellants point to several incidents where the court ruled out questions without first having an objection from the prosecution. But the circumstances were such that the questions were argumentative, repetitious in the extreme, or subject to an earlier considered ruling by the court. We believe that the control used by the trial court was not only justified but, indeed, was dictated by the duty of the moment.
283 F.2d, at 581.

In *United States v. Wheeler,* 444 F.2d 385 (10th Cir. 1971), we held:

The trial judge is allowed to participate in a trial and ask questions of witnesses in order to ascertain the facts. He cannot show hostility toward one side or become an advocate for one side.
444 F.2d, at p. 390.

In *McBride v. United States,* 409 F.2d 1046 (10th Cir. 1969), *cert. denied,* 396 U.S. 938, 90 S.Ct. 282, 24 L.Ed.2d 240 (1969), the trial judge questioned a witness who had given conflicting answers in response to questions asked on cross-examination. The judge premised his questioning with the explanation that he wanted the witness to clarify his answers. On appeal this Court said:

. . . the Court's interrogations were for the purpose of clarifying the facts in the case and were not advocacy. The questions asked were within the range of the judge's authority and did not prejudice in any way the rights of the defendant . . .
409 F.2d, at 1049.

■ The general rule is that a federal judge has the right to examine witnesses. Wright, Federal Practice and Procedure, Criminal, Vol. 2, § 415, pp. 176–178; *Barba-Reyes v. United States,* 387 F.2d 91 (9th Cir. 1967); *United States v. Ostendorff,* 371

F.2d 729 (4th Cir. 1967); *United States v. Rosenberg,* 195 F.2d 583 (2nd Cir. 1952), *cert. denied,* 344 U.S. 838, 73 S.Ct. 20, 97 L.Ed. 652 (1952); *United States v. Amorosa,* 167 F.2d 596 (3rd Cir. 1948).

The power of the court to call witnesses on its own motion in criminal cases, while seldom used, is recognized by both state and federal courts. *Smith v. United States,* 331 F.2d 265 (8th Cir. 1964), *cert. denied,* 379 U.S. 824, 85 S.Ct. 49, 13 L.Ed.2d 34 (1964); *United States v. Lutwak,* 195 F.2d 748 (7th Cir. 1952), affirmed 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593 (1953).

In *Cooper v. United States,* 403 F.2d 71 (10th Cir. 1968), we said:

> . . . While indications in the presence of the jury [by the judge] that statements of the defense counsel are *ridiculous,* are not to be encouraged, such conduct certainly does not constitute reversible error. *Petersen v. United States,* 268 F.2d 87, 88 (10th Cir. 1959). Indeed, that incident and the others discussed above, were no more than displays indicative of a firm control of the proceedings and fall well within the reasonable bounds within which a trial judge may act. *Inland Freight Lines v. United States,* 191 F.2d 313 (10th Cir. 1951). [Emphasis supplied.] 403 F.2d, at 73.

Measured by the above cited rules and evidence in the record before us, we hold that the trial court did not abuse its discretion. Pinkey's rights were not prejudiced. Even had we found prejudice, however, it would most certainly be harmless in light of the overwhelming evidence of Pinkey's guilt. Thus, any prejudicial effect of the trial court's alleged "advocacy" on behalf of the Government could rise no higher than harmless error. *Schneble v. Florida,* 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972); *Chase v. Crisp,* 523 F.2d 595 (10th Cir. 1975), *cert. denied,* 424 U.S. 947, 96 S.Ct. 1418, 47 L.Ed.2d 354 (1976).

■ Finally, we note that Pinkey failed to object to the trial court's action in regard to the court's suggestion that the Government conduct further examination of its handwriting expert. Pinkey elected to proceed with the trial of this case on a *pro se* basis, with court appointed counsel on hand for "stand-by" or "advisory" purposes whenever Pinkey *wished to seek legal assistance.* This, of course, was Pinkey's right. *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *United States v. Montgomery,* 529 F.2d 1404 (10th Cir. 1976), *cert. denied,* 426 U.S. 908, 96 S.Ct. 2231, 48 L.Ed.2d 833. And the "hybrid" arrangement [self-representation with "stand-by" counsel] was within the discretion of the trial court to allow. *United States v. Hill,* 526 F.2d 1019 (10th Cir. 1975), *cert. denied* 425 U.S. 940, 96 S.Ct. 1676, 48 L.Ed.2d 182.

■ Our review of the record in the present case convinces us that the trial judge did everything possible to inform Pinkey of the risks he was assuming by proceeding *pro se* at trial, particularly in light of the complicated aspects of a mail fraud case. When Pinkey insisted on proceeding *pro se,* the trial judge encouraged and requested that he seek the advice of his "stand-by" counsel. The trial court carefully and adequately pointed out to Pinkey the magnitude of the undertaking and the risks involved in self-representation. Under these circumstances, Pinkey nevertheless proceeded *pro se.* When he did so, he assumed the obligation of abiding the technical rules governing the conduct of a trial. Pinkey's failure to object to the alleged prejudicial action of the trial court works to estop him from raising the objection for the first time on appeal, absent plain error. *United States v. Taylor,* 536 F.2d 1343 (10th Cir. 1976); *Warden v. United States,* 391 F.2d 747 (10th Cir. 1968); Fed.Rules Crim. Proc., Rules 30 and 52(a), 18 U.S.C.A. This rule is the more applicable in light of the fact that Pinkey had available competent counsel to represent him at trial, but which he [Pinkey] elected to place on a "stand-by" basis simply to advise and counsel him upon his request. The trial court carefully and meticulously informed Pinkey of the nature of the charges, the complexity of the trial and of the issues involved. The trial court attempted to convince Pinkey that he

should not run the risks of proceeding *pro se*. Pinkey nevertheless intelligently, knowingly, and voluntarily made the choice to do so with full understanding of the risks involved. Under these circumstances the Constitution does not force a lawyer on an accused. *Moore v. Michigan,* 355 U.S. 155, 78 S.Ct. 191, 2 L.Ed.2d 167 (1957).

Pinkey intelligently and voluntarily waived his Sixth Amendment right of active participation and assistance of trial counsel. *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Having done so, he acquiesced in and subjected himself to the established rules of practice and procedure in federal criminal trials. *Carnley v. Cochran,* 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962).

The hazards which beset a layman when he seeks to represent himself are obvious. He who proceeds *pro se* with full knowledge and understanding of the risks does so with no greater rights than a litigant represented by a lawyer, and the trial court is under no obligation to become an "advocate" for or to assist and guide the *pro se* layman through the trial thicket. *Garrison v. Lacey,* 362 F.2d 798 (10th Cir. 1966), *cert. denied,* 387 U.S. 911, 87 S.Ct. 1696, 18 L.Ed.2d 630 (1967); *Murphy v. Citizens Bank of Clovis,* 244 F.2d 511 (10th Cir. 1957); *Carrigan v. California State Legislature,* 263 F.2d 560 (9th Cir. 1959), *cert. denied,* 359 U.S. 980, 79 S.Ct. 901, 3 L.Ed.2d 929 (1959); *Barnes v. United States,* 241 F.2d 252 (9th Cir. 1956).

WE AFFIRM.