# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs July 28, 2010 at Knoxville

## GEORGE T. HAYNIE, JR. v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**Nos. 2006-A-83, 2007-D-2946    Steve Dozier, Judge**

_____

### No. M2009-01167-CCA-R3-PC - Filed September 16, 2010

_____

The petitioner, George T. Haynie, Jr., appeals the denial of his petition for post-conviction relief wherein he challenged his 2007 guilty-pleaded convictions of theft of property valued at more than $1,000 but less than $10,000 and failure to appear. Discerning no error in the judgment of the post-conviction court, we affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and D. KELLY THOMAS, JR., J., joined.

George T. Haynie, Jr., Nashville, Tennessee, pro se.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; Victor S. Johnson III, District Attorney General; and Rachel Sobrero and Tammy Meade, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION

On November 29, 2007, the petitioner entered pleas of guilty to one count of theft of property valued at more than $1,000 but less than $10,000 and one count of failure to appear. Pursuant to a plea agreement with the State, the petitioner agreed to a sentence outside that proscribed for his offender classification range and received a total effective sentence of 12 years' incarceration with a 60 percent release eligibility percentage.[1] Although the transcript of the petitioner's guilty plea submission hearing is not part of the

_____

[1] Despite qualifying as a career offender, the petitioner's plea agreement provided for a Range II sentence length coupled with a career offender release eligibility percentage.

record on appeal, we surmise from evidence presented at the evidentiary hearing that the petitioner's convictions relate to his attempting to return for a cash refund tools he purchased from the Home Depot with stolen checks.

On October 1, 2008, the petitioner filed a timely petition for post-conviction relief alleging that his pleas were not voluntary, that he was denied the effective assistance of counsel, that the State engaged in prosecutorial vindictiveness, and that the trial court improperly appointed an attorney from the public defender's office to represent him initially. The petitioner specifically asked that no attorney be appointed to represent him in the post-conviction proceeding. Additionally, the petitioner attached to his petition a "Motion for Issuance of Subpoenas," naming some 10 potential witnesses, and a motion for discovery.

Due to the scheduling of the numerous witnesses subpoenaed by the petitioner, the evidentiary hearing was conducted in three parts. During the first part, conducted on November 21, 2008, the petitioner called Joe Francour,[2] who testified that he was working for Home Depot in 2005 when he was informed that the petitioner "used a stolen check to make a purchase of several tools and that he was refunding the tools off the order that he opened up with that fraudulent check." He stated that copies of the original transaction involving the stolen check and the attempted refund transaction were provided to the police. He stated that he was not aware of any investigation by an attorney representing the petitioner.

Officer Brewington[3] of the Metropolitan Nashville Police Department testified that he "made the initial report" regarding the stolen checks used at the Home Depot. Although he could not recall the specifics of the case, he remembered that no other suspects were initially charged in the crimes. He said that he did not follow-up on the report because the case was turned over to the "Fraud Division." He was not interviewed by the petitioner's attorneys.

Detective Clifford Mann, who conducted the investigation into the petitioner's offenses, testified that in the case of stolen checks numbered 25956 and 25958, he was the lead investigator while Detective Mike Smith was the lead investigator in the case involving check number 25957, which was written to the Home Depot. He stated that with regard to the stolen checks "the security personnel for the bank signed a warrant against a Mr. Richard

---

[2]Although the witness's first name does not appear in the transcript of the November 21, 2008 hearing, it appears in the transcript of the February 12, 2009 hearing as well as other places in the record.

[3]The petitioner did not ask the witness to state his name for the record, and his name does not appear in another place in the record.

L. Thompson. And he was a defendant in that case. And also in check number two five nine five eight (25958)." Detective Mann could not recall having been interviewed by counsel for the petitioner. He stated that he did not prepare the affidavit in support of the search warrant; that information was provided by Detective Smith.

At the conclusion of the November 21, 2008 hearing, the petitioner requested that other witnesses be subpoenaed and that he be permitted to recall Mr. Francour. The post-conviction court agreed to issue all but one of the requested subpoenas but refused to permit the petitioner to recall Mr. Francour.

At the February 12, 2009 evidentiary hearing, former Metropolitan Nashville Police Department Detective Mike Smith testified that on September 20, 2005, he responded to the Home Depot on Powell Avenue to investigate the passing of counterfeit checks. He stated that he was "called out to investigate a person at Home Depot . . . trying to return items that were purchased with counterfeit checks. It just happened to be [the petitioner], a case that [he] was working on." Detective Smith testified that the petitioner's truck along with several of the tools originally purchased with the stolen check were seized from the parking lot of the Home Depot. He stated that he was not interviewed by counsel for the petitioner prior to the petitioner's pleading guilty.

At the conclusion of the February 12, 2009 hearing, the petitioner indicated a desire to call another witness who was then hospitalized and the assistant district attorney who was representing the State in the post-conviction proceeding. The post-conviction court refused to allow the calling of the prosecutor but agreed to continue the hearing again for the petitioner to present further proof.

At the March 31, 2009 hearing, the post-conviction court informed the petitioner that his desired witness, apparently an officer previously employed with the Berry Hill Police Department, had suffered from a heart attack and was unavailable. The prosecutor indicated that she had spoken with the witness, who told her that his "sole purpose" at the Home Depot on the day of the petitioner's arrest was "detaining [the petitioner] until Metro got there. But he did not investigate the case in any way, he just detained him." The petitioner was unwilling to stipulate that that would be the witness's testimony, remarking, "I mean he's not dead. He's not dead so he will have to be available at some point in time." The court refused to further delay the hearing or subpoena the grievously ill witness for the sole purpose of testifying that he did not have probable cause to effectuate a custodial arrest.

The petitioner also reiterated his desire to subpoena the prosecutor "to establish the involuntary guilty plea." Despite the court's ruling that he could not do so, the prosecutor

noted her willingness to take the stand and "testify it was as voluntary as the day is long." Given the prosecutor's willingness, the post-conviction court permitted the petitioner to call Assistant District Attorney General Tammy Meade. Ms. Meade testified that she communicated a plea offer to the petitioner's counsel, Jason Gichner, on November 29, 2007. She stated that the November 29 offer was one of several she had made to the petitioner, who had previously refused all offers to plead. Ms. Meade explained that the petitioner, who was facing a charge of theft of property valued at more than $1,000 but less than $10,000, was a career offender because he had "fourteen prior convictions for theft" and that his potential sentence for that charge was "twelve years at sixty percent." In addition, because the petitioner "voluntarily failed to appear for [his] trial date and suppression hearing, [he] was facing a felony failure to appear and . . . six years at sixty percent." Ms. Meade added that because the petitioner was on bond when he failed to appear, the Code required mandatory consecutive service of the two sentences. She stated that she had not previously discussed the case with Mr. Gichner because he was not assigned to the petitioner's case but appeared in court on November 29, 2007, "to assist his . . . fellow public defenders."

Ms. Meade testified that in preparing the petitioner's case for trial, she learned of another "very closely connected" theft case involving the petitioner's using stolen checks to purchase tools at the Home Depot on Charlotte Pike and then returning the stolen tools for a cash refund at another Home Depot location. She stated that the petitioner was caught on videotape in the additional case. Ms. Meade testified that she made the plea offer to the petitioner because the petitioner "was facing eighteen years at sixty percent and [she] had another charge [she] could bring." She explained, "The consideration for this offer was that I would not bring that charge, and I have not to date, but I still could at some point. I've chose[n] not to because I made an agreement with you and I'm sticking to my agreement." She acknowledged that she told Mr. Gichner that she would seek to indict the petitioner on the additional theft charge if he did not plead guilty. Ms. Meade maintained that she was not "barred" from prosecuting the additional theft case by the rule of mandatory joinder because she "discovered it while preparing for the trial . . . that [the petitioner] didn't bother to show up for." Again she explained to the petitioner, "[U]nder the law and based on the facts that I had, it is not a case that would require mandatory joinder . . . ."

Ms. Meade insisted that the petitioner was not arrested without any proof, stating, "I don't believe that at all, I think there's more than probable cause, there's more than beyond a reasonable doubt in this case." Ms. Meade testified that in preparation for trial she interviewed witnesses from the Home Depot, the investigating detectives, and the Berry Hill police officer who detained the petitioner. She also stated that she photographed the tools that the petitioner purchased with the stolen checks and returned them to the Home Depot. She also photographed all the receipts in the petitioner's truck. She stated that documentation of her interviews as well as all the photographs were provided to the

-4-

petitioner by her personally as discovery both prior to his pleading guilty and in preparation for his post-conviction evidentiary hearing. She noted that the petitioner had been provided with "more than what is required under" the rules of discovery.

The pro se petitioner testified via lengthy narrative before submitting to questions by the court and the State. The petitioner testified that on September 20, 2005, he was "on his way out of the store headed towards the door" when he was "accosted" by a member of the Berry Hill Police Department, handcuffed, and placed into a patrol car. The petitioner stated that while he waited in the police cruiser, he attempted to give his truck keys to a friend "in order to take [his] truck home." Approximately 30 minutes later, Detectives Mann and Smith arrived, took the truck keys, and "started going through" the petitioner's truck. The truck was later towed away.

The petitioner complained that his first attorney, Kyle Mothershead, agreed to waive the preliminary hearing in exchange for a bond reduction without finding out that "a parole violation warrant had already been served on" the petitioner. He stated that because of the parole violation he was unable to make bond. He admitted, however, that he was aware of the violation warrant prior to agreeing to waive the preliminary hearing. Upon questioning by the court, the petitioner insisted that Mr. Mothershead's failure to conduct a preliminary hearing "was why I pled guilty, along with that and the threat from Ms. Meade to indict me on the other known theft case." The petitioner acknowledged that Amy Harwell, another attorney appointed to represent him, had filed a motion to suppress the evidence recovered from his truck but insisted that the filing of the motion "was not even necessary based upon" counsel's "failure to provide" an affidavit in support of the motion. The petitioner stated that he failed to appear for the hearing on that motion because he "was sick in the hospital" and "was under medication." He stated that he did not come to court following his release from the hospital because he "figured there was a warrant out for [his] arrest" and that he would "eventually be picked up anyway." He said that he pleaded guilty because he "was told that . . . if [he] took that twelve year sentence Ms. Meade would not indict [him] on this other known theft case." He insisted, however, that Ms. Meade "had misrepresented the facts . . . because she was barred from saving back that particular other known theft case for prosecution."

Upon questioning by the State, the petitioner refused to acknowledge whether he had told his attorneys that he did not commit the theft offense, insisting that despite claiming ineffective assistance of counsel he had not waived the attorney-client privilege. He also acknowledged that five different attorneys had been appointed to represent him prior to his pleading guilty and that he had chosen to represent himself for "a while" prior to the entry of the pleas. He admitted that he had received a copy of the prosecutor's entire file in his case and that he signed the waiver of the preliminary hearing in exchange for a reduction

in his bond at a time when he was aware of the parole violation warrant.

The petitioner agreed that after being released on bond following his parole revocation, he had the opportunity to investigate his case during the period that he represented himself. During that time, he interviewed no witnesses and conducted no other investigation. He stated that Ms. Harwell represented him from August 2007 until he failed to appear for trial and that "[s]he did a very good job." He acknowledged that Ms. Harwell filed numerous motions, including a motion to suppress that challenged the probable cause for his arrest as well as the search of his truck, and that the motions were not heard because he failed to appear on the trial/hearing date. The court interjected that the sole reason the petitioner's motions were not heard was the petitioner's absence.

The petitioner insisted that he failed to appear because he was "comatose" until "four or five" p.m. on the scheduled date but that he had been unable to obtain his hospital records. Upon further questioning by the court and the State, the petitioner clarified that he was not actually hospitalized on the scheduled trial date, as he had earlier claimed, but that he had been hospitalized earlier and that the earlier hospitalization somehow caused his failure to appear. He finally admitted that on the scheduled trial date he was "at home under medication, under the doctor's orders." He said that he "woke up that evening about two o'clock" but admitted that he did not call and tell his attorney what had happened. He stated that rather than turning himself in, even though he knew there was a warrant for his arrest, he "tried to work as much as [he] could, to make as much money as [he] could, for the purpose of trying to hire a lawyer or either make bond on that particular offense." The petitioner admitted that he was eventually arrested not on the warrant for his failure to appear but because he was caught stealing merchandise from a Walmart store. The petitioner refused to acknowledge his responsibility in the motions' going unheard, insisting instead that "it was fate."

Upon further questioning by the court, the petitioner conceded that he agreed to plead guilty largely because the prosecutor agreed not to prosecute the other, unrelated theft charge. He admitted that he had pleaded guilty on some fourteen previous occasions to various property offenses over a period of 26 years.

The petitioner also conceded that he understood and agreed to the sentence that was imposed pursuant to the plea agreement and that no one had induced him to plead guilty. He admitted that he filed a motion for a suspended sentence in December 2008 and that he was not entirely truthful in that pleading. In it, he claimed that he had apologized to the person from whom the check was stolen and to the Home Depot even though he had not done so.

The State called Jason Gichner, an assistant public defender who represented the petitioner on the day that he entered the guilty pleas that were the subject of the post-conviction petition. He stated that he went to court on November 29, 2007, in the place of the assistant public defender who had been assigned to the petitioner's case because she was unable to be in court that day. He recalled that the petitioner was to be arraigned on the failure to appear charge on that day and that his colleague believed the case might settle. Mr. Gichner testified that he communicated the plea offer to the petitioner and explained his constitutional rights but "didn't get into the substantive facts of the case other than . . . asking him whether he had discussed the facts and circumstances of the case" with his other attorney. He stated that the petitioner indicated that he was aware of the facts and circumstances of the case as well as his constitutional rights. He also informed the petitioner of his range of punishment and release eligibility percentage. Mr. Gichner stated that the petitioner never gave any indication that "he was not interested in taking the offer."

At the conclusion of the final hearing, the trial court took the petition under advisement. In an extensive order detailing its findings of facts and conclusions of law, the post-conviction court denied relief based upon its determination that the petitioner's counsel were not ineffective and that the petitioner's plea was voluntary.

In this appeal, the petitioner contends that he was denied a full and fair hearing on his petition for post-conviction relief, that his guilty pleas were not voluntarily entered, and that he was denied the effective assistance of counsel.

A post-conviction petitioner bears the burden of proving his or her allegations by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103.

*I. Full and Fair Hearing*

The petitioner contends that he was denied the right to a full and fair hearing, listing some 45 "actions of the court which denied appellant a full and fair hearing." The gist

of the petitioner's claims is that he was unhappy with the manner in which the post-conviction judge conducted the three-part hearing. He complains that he was not permitted to subpoena necessary witnesses, that the court improperly interfered with his examination of witnesses, and that the court improperly inquired into his guilt of the charged offenses. He also complains that he was not provided with required discovery materials. The record belies each of the petitioners claims.[4]

"[A] 'full and fair hearing . . . occurs if a petitioner is given the opportunity to present proof and argument on the petition for post-conviction relief.'" *State v. West*, 19 S.W.3d 753, 755 (Tenn. 2000) (quoting *House v. State*, 911 S.W.2d 705, 714 (Tenn. 1995)). Due process is satisfied where the post-conviction petitioner is given the opportunity to be heard "at a meaningful time and in a meaningful manner." *Stokes v. State*, 146 S.W.3d 56, 61 (Tenn. 2004); *see also House*, 911 S.W.2d at 711.

The petitioner's first complaint regarding his hearing is that the post-conviction court's order failed to direct the State to provide discovery and that, as a result, the State failed to provide him with discovery materials. We need not tarry long over the petitioner's claim, however, because the record reflects that despite any deficiencies in the preliminary order of the post-conviction court, the State satisfied the discovery requirements of Rule 16 of the Tennessee Rules of Criminal Procedure and of Rule 28 of the Rules of the Tennessee Supreme Court. The accredited testimony of Ms. Meade established that Ms. Meade photocopied her entire case file and provided it to the petitioner. There was simply nothing further for the petitioner to discover. This claim is without merit.

The petitioner next launches a litany of complaints regarding the post-conviction court's handling of the evidentiary hearing, including the court's limiting his right to subpoena witnesses and to cross-examine those witnesses and to offer testimony. Again, we see no error in the actions of the post-conviction court.

The record establishes that the post-conviction court permitted the petitioner to subpoena every witness he desired save two. The first, apparently an officer of the Berry Hill Police Department, was grievously ill at the time of the post-conviction hearing, having suffered from a heart attack. We cannot say that the post-conviction court abused its discretion by refusing to postpone the hearing indefinitely on the slim chance that the witness, whose only role in the case was the brief detention of the petitioner at the Home Depot, might have become available at some point to offer testimony that was, as best we can surmise from the record, wholly immaterial. The petitioner wanted this witness, he says, to

---

[4]The record, in fact, establishes that many of the petitioner's assertions regarding the actions of the post-conviction court are patently false.

establish that his initial detention by the Berry Hill Police Department was not based upon probable cause. The State conceded as much during the evidentiary hearing, noting that the petitioner was detained on reasonable suspicion, and, as both the prosecutor and the post-conviction judge attempted to explain to the petitioner, any illegality in his initial detention was cured by his later indictment on charges of theft, forgery, and failure to appear. *See, e.g.*, *Jones v. State*, 332 S.W.2d 662, 667 (Tenn. 1960).

The petitioner wanted to secure the testimony of the second potential witness, a manager from the Home Depot store, for the sole purpose of describing the merchandise return policy of the Home Depot. Again, this testimony was wholly immaterial to the issues raised in the petition for post-conviction relief. We cannot fathom how the merchandise return policy of the Home Depot would have shed light on the petitioner's claims of ineffective assistance of counsel and involuntary guilty plea.

Because neither of these potential witnesses would have offered relevant testimony material to the petitioner's claims, the post-conviction court did not err by refusing to allow the petitioner to subpoena them. *See United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982) (observing that "the Sixth Amendment does not by its terms grant to a criminal defendant the right to secure the attendance and testimony of any and all witnesses: it guarantees him 'compulsory process for obtaining *witnesses in his favor*'" and holding that, to be entitled to relief, an accused must show that the "'testimony would have been *relevant* and *material*, and . . . *vital* to the defense'") (citations omitted); *see also Bacon v. State*, 385 S.W.2d 107, 109 (Tenn. 1964) (holding that the state constitutional right to compulsory process extends only to those witnesses who are "or probably will be . . . material").

The record also establishes that although the post-conviction court did not permit the petitioner to ask every question he desired during his examination of the witnesses, the limitations placed upon the petitioner's questions were only those required by the rules of evidence. Like the right to compulsory process, the right to confront and examine witnesses is not absolute. The petitioner does not detail with any specificity those questions he was not permitted to ask; however, a review of the evidentiary hearing transcript establishes that the post-conviction court prohibited only those questions designed to elicit testimony not germane to the issues raised in the petition for post-conviction relief. Again, the petitioner cannot be heard to complain that he was not permitted to offer irrelevant testimony or question his witnesses regarding matters not material to the issues raised in his petition for post-conviction relief. In addition, the record establishes that the post-conviction court appropriately attempted to prevent the pro se petitioner from offering unsworn testimony during his questioning of the witnesses.

The petitioner complains that the post-conviction court and the State

improperly questioned him during the evidentiary hearing. The petitioner claims that the court should not have inquired into his guilt of the charged offense and that the court and the State alike inappropriately asked him to testify about matters protected by the attorney-client privilege. By taking the stand to offer testimony at the evidentiary hearing, the petitioner subjected himself to examination by the post-conviction court and by the State. No rule of law permits a pro se petitioner to take the stand for the sole purpose of giving an unchecked narrative. Further, by challenging the performance of his attorneys, the petitioner waived the attorney-client privilege. *See generally Bryan v. State*, 848 S.W.2d 72, 80-81 (Tenn. Crim. App. 1992). Finally, we cannot say that the post-conviction court's inquiries into the petitioner's guilt were improper under the circumstances. *See* Tenn. Sup. Ct. R. 28, § 8 (permitting questions to the petitioner about the facts underlying the convictions when "necessary to establish the allegations of the petition or necessary to the [S]tate's attempt to rebut the allegations of the petition").

Finally, we note that although the petitioner claims that "[t]he state and lower court made it as difficult and unfair as possible for appellant to proceed pro se," nothing could be further from the truth. At every possible turn, the post-conviction court did its level best to ensure that the petitioner was given every opportunity to present his claims. The court permitted the petitioner to call witnesses whose testimony was only marginally relevant and assisted the petitioner in his questioning of those witnesses to help the petitioner get the evidence he wanted into the record. The court continued the hearing on two separate occasions after the petitioner indicated a desire to call other witnesses he had not yet subpoenaed. That the post-conviction court required the petitioner to follow the same rules imposed on counsel does not support a finding that the court was being "difficult" or "unfair." *See Oudon Panyanouvong v. State*, No. M2000-03152-CCA-R3-PC, slip op. at 5 (Tenn. Crim. App., Nashville, Nov. 16, 2001) (holding that a post-conviction petitioner who elects to proceed pro se "must comply with all relevant rules and statutory guidelines. The trial judge 'is under no obligation to become an 'advocate' for or to assist and guide the pro se layman through the trial thicket.'" (quoting *United States v. Pinkey*, 548 F.2d 305, 311 (10th Cir. 1977))). Furthermore, the State cooperated fully with the petitioner in the presentation of his case. Ms. Meade agreed to subject herself to cross-examination by the petitioner even though she was under no duty to do so, and she copied her entire file and provided it to the petitioner in discovery.

The petitioner was given the opportunity to present each of his claims at a meaningful time and in a meaningful manner. Accordingly, he has failed to establish that he was denied the right to a full and fair hearing of his post-conviction claims.

*II.  Voluntariness of the Guilty Pleas*

The petitioner contends that his guilty pleas were not knowingly, intelligently, and voluntarily entered because they were induced by the prosecutor's promise not to prosecute the petitioner on a charge that she was, in fact, statutorily barred from pursuing. The petitioner agreed that he pleaded guilty in this case based upon the prosecutor's agreeing that she would not seek to indict him on another theft charge arising from a separate instance of the petitioner's returning tools for cash that had been purchased with stolen checks.  He argued that because the charge was improperly "saved back" in violation of Rule 8 of the Tennessee Rules of Criminal Procedure, his plea was based upon prosecutorial misconduct and was not, therefore, voluntary.

"The validity of a guilty plea is a mixed question of law and fact."  *Jeffery Aaron Lane v. State*, --- S.W.3d ---, No. E2007-00032-SC-R11-PC, slip op. at 6 (Tenn., July 14, 2010) (citing *Jaco v. State*, 120 S.W.3d 828, 830 (Tenn. 2003)).  "Whether a plea was knowing and voluntary is an issue of constitutional dimension because 'the due process provision of the federal constitution requires that pleas of guilty be knowing and voluntary.'"  *State v. Wilson*, 31 S.W.3d 189, 194 (Tenn. 2000) (quoting *Johnson v. State*, 834 S.W.2d 922, 923 (Tenn. 1992)).

> A defendant who enters such a plea simultaneously waives several constitutional rights, including his privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers.  For his waiver to be valid under the Due Process Clause, it must be "an intentional relinquishment or abandonment of a known right or privilege."  Consequently, if a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void.

*Boykin v. Alabama*, 395 U.S. 238, 243 n.5 (1969).  Thus, "a claim . . . that a plea was not voluntarily and knowingly entered, implicates his due process rights and therefore falls squarely within the ambit of issues appropriately addressed in a post-conviction petition."  *Wilson*, 31 S.W.3d at 194.  A plea "may not be the product of '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats.'"  *Id.* at 195 (quoting *Boykin*, 395 U.S. at 242-43); *see also State v. Mellon*, 118 S.W.3d 340, 345 (Tenn. 2003) ("Certainly, a plea is not 'voluntary' if it results from ignorance, misunderstanding, coercion, inducements, or threats.") (citing *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993)); *see Sexton v. State*, 151 S.W.3d 525, 532 (Tenn. Crim. App. 2004) (stating that "the nature of the proceeding, the exchange between the trial court and the petitioner, and the relatively

beneficial plea agreement reflect the petitioner's knowledge and understanding that [his] constitutional rights relative to the trial process were not to be asserted by [him] any further").

Here, the petitioner acknowledged that he was aware of the rights he forfeited by pleading guilty and claimed infirmity in the plea only because of the State's alleged misrepresentation. Rule 8 of the Tennessee Rules of Criminal Procedure requires the State to join in a single indictment all offenses that are "based on the same conduct or arise from the same criminal episode; . . . within the jurisdiction of a single court; and . . . known to the appropriate prosecuting official at the time of the return of the indictment." Tenn. R. Crim. P. 8(a)(1). The accredited testimony of Ms. Meade established that the theft charge that she agreed not to pursue was not part of the same criminal episode as the offense to which the petitioner pleaded guilty and was not known to her at the time of the indictment in the petitioner's case. The petitioner offered no other proof to support his assertion that the unindicted charge had been impermissibly "saved back." In consequence, his claim that his plea was induced by prosecutorial misrepresentation is without merit.

The record establishes that at the time he entered his guilty pleas in this case, the petitioner faced a potential sentence of 18 years' incarceration at 60 percent service and further indictment for another theft offense. The State offered the petitioner a plea agreement that provided for a substantially reduced sentence and a promise not to pursue further charges against the petitioner. The petitioner has received the benefit of his bargain. We cannot say that the terms of the plea agreement rendered the petitioner's pleas involuntary.

*III. Ineffective Assistance of Counsel*

The petitioner asserts that he was denied the effective assistance of counsel because his attorneys failed to investigate his case and because one of his attorneys failed to discuss the facts of the case with him prior to his pleading guilty. To establish entitlement to post-conviction relief via a claim of ineffective assistance of counsel, the post-conviction petitioner must affirmatively establish first whether "the advice given, or the services rendered by the attorney, are within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and second that his counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

In the context of a guilty plea, the petitioner must establish that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v.*

-12-

*Lockhart*, 474 U.S. 52, 59 (1985). To do so, he must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*; *see Hicks v. State*, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998). In the context of ineffective assistance of counsel that resulted in a guilty plea, the petitioner is not required to demonstrate that he likely would have fared better at trial than he did by pleading guilty, although evidence of this type can be persuasive that he would have insisted on his right to a jury trial. *See Hill*, 474 U.S. at 59. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When reviewing a claim of ineffective assistance of counsel, we will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Claims of ineffective assistance of counsel are regarded as mixed questions of law and fact. *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. *Fields*, 40 S.W.3d at 457-58; *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

The evidence adduced at the evidentiary hearing established that the attorneys appointed to represent the petitioner failed to investigate his case. The petitioner must acknowledge, however, that of the five different lawyers appointed to his case, only Ms. Harwell, who he conceded had done a "good job," represented him for any meaningful period of time prior to his pleading guilty. The petitioner proceeded pro se for several months while the case was pending in the trial court. Yet during this time, the petitioner made no effort to perform any investigation of his own. Furthermore, the petitioner failed to unearth any fact that, had he known it prior to his pleading guilty, would have prevented him from pleading guilty. If anything, the petitioner's questioning of the witnesses at the evidentiary hearing served only to bolster the finding of guilt in this case. In consequence, the petitioner has failed to establish that he was prejudiced by any deficiency in the performance of the attorneys appointed to represent him.

*Conclusion*

Because the petitioner has failed to establish by clear and convincing evidence that his pleas were not voluntary or that he was denied the effective assistance of counsel, we affirm the judgment of the post-conviction court.

_____
JAMES CURWOOD WITT, JR., JUDGE